Jonathan Dye JONES, Plaintiff-Appellee,

v.

Lee CANNON, in his official and individual capacities as Sheriff of Pasco County, Florida, Timothy Powers and Rodney Bishop, in their official and individual capacities as Detectives for Pasco County, Florida, Defendants-Appellants.

No. 97-2378.

United States Court of Appeals,

Eleventh Circuit.

May 11, 1999.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-1801-CIV-T-17E), Thomas B. McCoun, III, Magistrate Judge.

Before HATCHETT, Chief Judge, HULL, Circuit Judge, and LENARD[*], District Judge.

HULL, Circuit Judge:

Plaintiff Jonathan Dye Jones brought this action under 42 U.S.C. §§ 1983 and 1985, alleging that the Defendants violated his constitutional rights during a criminal investigation and trial. Defendants Sheriff Lee Cannon, Detective Timothy Powers, and Detective Rodney Bishop appeal the magistrate judge's order granting in part and denying in part their motions for summary judgment. After review, we affirm in part and reverse in part.

I. FACTUAL BACKGROUND

Plaintiff Jonathan Dye Jones was arrested, tried, and acquitted of the murder and sexual assault of Katharyn Murphy. Defendant Timothy Powers, a detective with the Pasco County, Florida Sheriff's Office, led the investigation. Defendant Rodney Bishop, another Pasco County detective, assisted Powers. Defendant Lee Cannon was the Sheriff of Pasco County during the investigation. Plaintiff's version of events follows.

A.     *Initial Interview*

---

[*]Honorable Joan A. Lenard, U.S. District Judge for the Southern District of Florida, sitting by designation.

After the homicide, Detectives Powers and Bishop interviewed two past boyfriends of Murphy, one of whom was Plaintiff Jones.

During that interview on November 24, 1993, at his parents' home, Plaintiff Jones gave conflicting stories about when he had last seen Katharyn Murphy. Initially, Jones indicated that he had not seen Murphy on Friday night of the weekend of her murder, and that after work he had met Debra Gilliard, before returning straight to his parents' house around midnight. Jones volunteered hair and blood samples.

After giving a blood sample and learning that the officers would try to match his DNA with the DNA in seminal fluid found on the victim, Plaintiff Jones admitted being with Murphy that Friday night. Jones first told the officers he had been with Murphy at six or seven o'clock in the evening before meeting Gilliard. Jones told the police he remembered seeing a band-aid on Murphy's hand from a small cut, and that she may have bled on him, but that she never was in his car.

Later, Jones told Powers he could not remember at what time he was with Murphy. Next, Jones told Powers he was with Murphy sometime around 11 or 11:30 p.m. When Powers told Jones he could place Jones at a tavern until 12:30 a.m. or 1:00 a.m., Jones admitted he was with Murphy around 1:30 a.m. or 2:00 a.m., and that they had consensual sex in her living room. Jones said that when he left Murphy, she was cooking in her kitchen.

At that point, Detective Powers claims to have stopped the conversation so that he could call the state attorney's office. Detective Bishop stayed with Jones while Powers telephoned. The state attorney reportedly told Powers that there was no probable cause and that he and Bishop should leave. Powers claims to have told Jones that he and Bishop were leaving and would call with the test results. According to Powers, Jones asked to go with the detectives, afraid a lynch mob would get him. On the other hand, Jones says that Powers told him he was taking Jones to the Sheriff's Office as a suspect. Jones claims he thought he was being arrested, although Jones now acknowledges that at that time he was not placed under arrest. Powers and Bishop believed that they did not have probable cause at this point in their investigation.

2

Jones was not handcuffed, and sat in the front seat of the automobile on the way to the Sheriff's Office, with Bishop in back. Bishop claims he advised Jones of his *Miranda* rights on the way to the Sheriff's Office, but Jones denies ever receiving *Miranda* warnings.

B.    *Sheriff's Office Interview*

At the Sheriff's Office, Powers, Bishop, and Jones went to an interview room. Jones was not under arrest. At one point someone came to the door, and Bishop left the room for approximately a minute, during which time Jones continued talking to Powers. Otherwise both Powers and Bishop were present during the interview.

Detective Powers states that during this interview Jones admitted killing Murphy. During the criminal trial and pre-trial depositions, Bishop and Powers testified that Jones confessed to killing Murphy. Powers says that Bishop asked Jones at the jail for a taped statement, but Jones declined. Bishop testified that he offered Jones the opportunity to have his statement tape recorded or to give a written statement, but Jones declined. The detectives did not type a written confession for Jones to sign.

Plaintiff Jones denies ever confessing. Jones claims he repeatedly told the detectives that he did not know what happened to Murphy and that when he left her, she was still alive. Although Jones thinks both officers were present during his denials, he acknowledges that they repeatedly entered and left the room.

When the interview at the Sheriff's Office concluded, Powers told Jones he was under arrest.

C.    *Police Report and Notes*

As was the detectives' practice throughout the Murphy investigation, only one police report was filed regarding Jones's interview, although both detectives took handwritten notes. One officer would dictate the report and the other would review it. Detective Powers prepared and filed the report regarding the Jones interview. Bishop reviewed the report for accuracy, but did not prepare or sign it. Powers's typewritten report about the Jones interview is dated December 1, 1993. Powers shredded his handwritten notes after they were dictated onto report forms. Bishop's handwritten notes were likewise destroyed.

3

*D.      Request for Attorney*

When Cindy Long, Jones's girlfriend, arrived at the police station, Jones was still being interviewed and had not yet been placed under arrest. Subsequently, one of the police officers told Long that Jones had confessed. Long and Jones spoke after Jones had been placed under arrest. During that conversation, Jones claims he asked Long to call his home and to get him an attorney. Powers allegedly told Long that Jones did not need a lawyer. When Long telephoned Jones's mother at Jones's direction to seek an attorney, Powers reportedly got on the telephone and told Jones's mother that no attorney was necessary. Powers told both Long and Mrs. Jones that Plaintiff had confessed.

According to Detective Powers, however, the first time Jones requested counsel was after Jones had been arrested and was being transported to jail.

*E.      Powers's Arrest Affidavit*

After Powers told Jones he was under arrest, Powers and Bishop drove Jones back to his parents' home where Jones retrieved for the detectives the clothing he had worn the previous Friday night, the night the detectives believed Murphy was killed. The detectives then drove Jones to jail where he was booked. During the trip to jail, Jones told Powers and Bishop the name of the person he intended to hire as his defense attorney.

On the evening of Jones's arrest, Powers completed an affidavit, entitled "Arrest/Notice to Appear" (hereinafter, "arrest affidavit"). Jones was already under arrest and this affidavit was prepared for use at a hearing to determine the existence of probable cause for continuing to detain Jones. Powers completed the arrest affidavit, dated November 24, 1993, which stated that Jones had admitted the murder:

> Your affiant being a duly sworn detective in and for Pasco County, did have occassion [sic] to investigate the murder of KATHARYN MURPHY. During your affiant's investigation, affiant learned that the defendant, JONATHAN DYE JONES, did enter the victim's residence [sic] and once inside did cause the death of KATHARYN MURPHY by committing murder in the first degree. Following Miranda Warning, the defendant did admit to said incident. The defendant was then booked into the Pasco County Jail at Land O' Lakes.

4

Powers prepared and filed the original affidavit for delivery to the Clerk of the Circuit Court to be reviewed by a judge the next morning to evaluate whether probable cause existed to continue to detain Jones and to aid in determining whether bond would be set and, if so, in what amount. According to Powers, the probable cause hearing was held on Thursday, November 25, 1993, although he did not testify. There is nothing else in the record regarding this hearing.

There is no evidence Bishop was present for or participated in the preparation of Powers's arrest affidavit.

F.      *Luminoled Boot Print*

As part of the crime scene investigation, the inside of Murphy's bedroom was processed with luminol, a chemical spray which reveals blood patterns that would otherwise remain unseen. Positive reactions, appearing to be in the shape of a hand print and finger swipes, were observed on the interior walls of the closet and columns separating the openings. The crime scene was released from police control on November 23, 1993.

On Friday, November 26, 1993, two days after Jones's arrest, Detective Powers and a crime scene technician obtained a pair of Jones's work boots from Long's residence. On December 2, 1993, another luminol test was performed in Murphy's bedroom closet. This luminol test showed a positive finding in the shape of a boot print. The property receipt for the boots indicates their receipt on December 2, 1993.

G.      *Indictment*

On December 13, 1993, a grand jury indicted Jones for the first degree murder and sexual assault of Katharyn Murphy. Powers testified before the grand jury, but Bishop did not. After a hearing on December 20, 1993, the Circuit Court denied bond to Jones.

H.      *Cell Mate Testimony*

5

On December 16, 1993, Detective Powers met with Gary Sutton, Jones's cell mate. Sutton wanted a deal in exchange for information. At Jones's trial, Powers testified that he told Sutton there would not be any deals, but Sutton gave Powers information anyway.

According to Powers, Sutton told him that, "Jones told Sutton that he had in fact killed Katharyn Murphy." According to Jones, Sutton tried to get Jones to talk about the case, asking him what was going on in the case, or what Jones's attorney had asked. Jones declined, telling Sutton that, "It's none of your business." After Sutton testified at Jones's trial, Sutton received early parole.

I.      *Sheriff's Office Policies and Procedures*

At the time of Murphy's homicide, the Pasco County Sheriff's Office did not have a policy or procedure for recording witnesses' statements either by video tape, tape recorder, or other means; it was left up to the individual officer's ability and discretion. Subsequent to the Murphy investigation, the office adopted a policy that witnesses' statements be tape recorded when possible and practical.

The Pasco County Sheriff's Office had no policy or procedure in investigating a homicide regarding maintaining or shredding notes. The Office left the decision to each individual detective, in accordance with the officer's and the state's attorney's determination as to what records they would want and as to what is a public record.

J.      *Conduct Following Acquittal*

The jury acquitted Jones on June 11, 1994. Thereafter, Jones claims that he was pulled over constantly by Sheriff's deputies for the sole purpose of harassment. According to Jones, he was "tailed at a dangerously close distance by Pasco County Sheriff's Office cruisers." However, Jones details only two separate harassment incidents.

First, Jones alleges that in October 1994, he was pulled over by Detective Powers and given a bogus traffic citation. Powers was in plain clothes, in an unmarked vehicle, and was still a homicide detective. Jones's and Powers's versions of the traffic stop differ. Jones's affidavit states that "Powers had been

6

following Plaintiff, then quickly veered his car in front of Plaintiff, slowed down immediately, then pulled Plaintiff over." Powers showed his pistol outside of the holster, although he did not point it at Jones. According to Jones, Powers detained him and cited him for following too closely without probable cause. The traffic citation was dismissed subsequently. During the incident, a number of other Sheriff's deputies came to the location where Powers had stopped Jones.

In contrast, Powers's affidavit states that he "coincidentally pulled up behind a pick-up truck operated by Mr. Jones. Mr. Jones pulled into the left lane and I passed him. Thereafter, Mr. Jones proceeded to follow me at an unsafe distance. He was so close to my car that the grille of the truck filled the view in my mirror. I then pulled off to the side of the road and placed my emergency light on the dash of my car in an attempt to accomplish a traffic stop. Mr. Jones did not cooperate in my efforts to pull him over."

The second incident occurred in April 1995. Jones contends that he was wrongfully singled out and harassed by Pasco Deputy Arnew, who was directing traffic on State Road 52. As a result of the contact with Deputy Arnew, Jones was sprayed with pepper gas and arrested. Jones was charged with "Battery on a Law Enforcement Officer" and "Resisting Arrest with Violence." Deputy Arnew's sworn police report states that Jones was the aggressor and that the confrontation occurred coincidentally because Jones was traveling in this area at the same time the deputy was directing traffic. Jones claims, however, that the incident is further evidence of harassment at the hands of the Pasco County Sheriff's Office. There is no evidence that Deputy Arnew was connected with the Murphy homicide investigation.

*K.      Procedural History*

After discovery, Defendants filed motions for summary judgment based on absolute and qualified immunity. The magistrate judge granted in part and denied in part the Defendants' motions.[1]

Specifically, summary judgment was granted for Defendants Powers and Bishop on Count I, because naming them in addition to Sheriff Cannon in this official capacity claim was redundant. Summary judgment

---

[1]The parties consented to proceeding before the magistrate judge. *See* 28 U.S.C. § 636(c).

7

was granted for Defendant Sheriff Cannon on Count VI, a state law claim for false imprisonment, because Plaintiff produced no evidence that Sheriff Cannon personally participated in arresting or detaining Plaintiff. Summary judgment was granted for Defendants Powers and Bishop on Count II, a § 1985(3) claim for conspiracy to violate Jones's civil rights, because there was no evidence of invidious class-based discrimination. Defendants' motions for summary judgment were otherwise denied.

Defendants appeal, challenging the magistrate judge's denial of absolute and qualified immunity on these remaining counts in the complaint as to these parties:

(1) Count I:  § 1983 claim against Defendant Sheriff Cannon in his official capacity, alleging a custom or policy of inadequate investigative standards;

(2) Count VII: § 1983 claims against Defendants Powers and Bishop in their individual capacities for violating Jones' constitutional rights;  and

(3) Counts III through VI:  state law claims against all Defendants individually for malicious prosecution, and against Defendants Powers and Bishop individually for intentional infliction of emotional distress, false arrest, and false imprisonment.

## II. STANDARD OF REVIEW

The denial of summary judgment to defendants claiming absolute and qualified immunity in a § 1983 claim is an appealable interlocutory order. *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 525-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985);  *Winfrey v. School Bd. of Dade County,* 59 F.3d 155, 158 (11th Cir.1995); *McKinney by McKinney v. DeKalb County, Ga.,* 997 F.2d 1440, 1442 (11th Cir.1993). The court reviews *de novo* the magistrate judge's denial of absolute and qualified immunity on summary judgment. *Gold v. City of Miami,* 121 F.3d 1442, 1444-45 & n. 3 (11th Cir.1997), *cert. denied,* --- U.S. ----, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998);  *Hudgins v. City of Ashburn, Ga.,* 890 F.2d 396, 403 (11th Cir.1989). For summary judgment purposes, the facts are construed in the light most favorable to Plaintiff. *Gold,* 121 F.3d at 1444

n. 1; *see also Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1420 n. 1 (11th Cir.1997); *McKinney,* 997 F.2d at 1442-43.

## III. DISCUSSION

Defendants assert that the magistrate judge erred in denying them absolute immunity or at least qualified immunity. We first examine the general principles applicable to those immunity defenses and then apply them to the facts here.

*A.     Absolute Immunity*

Although the text of 42 U.S.C. § 1983 does not explicitly provide immunity, the Supreme Court has reasoned that at the time Congress enacted § 1983, Congress meant to incorporate the common law immunities then available, or would have explicitly provided otherwise. *Imbler v. Pachtman,* 424 U.S. 409, 417-18, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Malley v. Briggs,* 475 U.S. 335, 339-40, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Thus, determination of absolute immunity under § 1983 is not a policy determination, but involves a historical exercise. *Malley,* 475 U.S. at 339-40, 106 S.Ct. 1092; *Imbler,* 424 U.S. at 418, 421, 96 S.Ct. 984; *Buckley,* 509 U.S. at 268, 113 S.Ct. 2606. The Supreme Court has interpreted § 1983 to give absolute immunity to functions "intimately associated with the judicial phase of the criminal process." *Malley,* 475 U.S. at 342, 106 S.Ct. 1092 (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984).

Witnesses are granted absolute immunity for their testimony during trials, *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), and during grand jury proceedings. *Strength v. Hubert,* 854 F.2d 421 (11th Cir.1988). Judicial and quasi-judicial officers also enjoy absolute immunity. *Imbler,* 424 U.S. at 420-21, 96 S.Ct. 984.

Likewise, prosecutors enjoy absolute immunity for the initiation and pursuit of criminal prosecution. *Imbler,* 424 U.S. at 431, 96 S.Ct. 984. A prosecutor is absolutely immune from suit for malicious prosecution. *Malley,* 475 U.S. at 342-43, 106 S.Ct. 1092. Prosecutors also enjoy absolute immunity for

9

appearances before the court, such as examining a witness and presenting evidence in support of a search warrant during a probable cause hearing. *Burns v. Reed,* 500 U.S. 478, 490-92, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate. *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606. Such absolute immunity extends to a prosecutor's "acts undertaken ... in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606; *Mastroianni v. Bowers,* --- F.3d ----, No. 95-8107 (11th Cir. Apr. 29, 1999).

Police officers enjoy the same absolute immunity as lay witnesses for their testimony at trial, *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), or in front of the grand jury. *Kelly v. Curtis,* 21 F.3d 1544, 1553 (11th Cir.1994); *Strength v. Hubert,* 854 F.2d 421 (11th Cir.1988). The penalty for false testimony under such circumstances is the same for any witness, that is, a potential prosecution for perjury. *Briscoe,* 460 U.S. at 342, 103 S.Ct. 1108.

Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state. *Buckley,* 509 U.S. at 269-70, 113 S.Ct. 2606; *Mastroianni,* --- F.3d at ----. Additionally, prosecutors have not enjoyed absolute immunity for giving certain legal advice to police during an investigation. *Burns,* 500 U.S. at 496, 111 S.Ct. 1934. Prosecutors also have not been given absolute immunity for pre-indictment endeavors seeking to determine whether a boot print at the scene of a crime was made by a suspect's boot and was allegedly fabricated, or for post-indictment out-of-court statements to the press. *Buckley,* 509 U.S. at 273-78, 113 S.Ct. 2606; *Mastroianni,* --- F.3d at ----. Finally, a prosecutor does not enjoy absolute immunity for knowingly making false statements of fact in an affidavit supporting an application for an arrest warrant. *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Likewise, police officers do not have absolute immunity for submitting supporting affidavits in their applications for arrest warrants. *Malley,* 475 U.S. at 342-43, 106 S.Ct. 1092.

10

The net result of these cases is that a functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials. *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606. Courts must look to " 'the nature of the function performed, not the identity of the actor who performed it.' " *Id.* (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). If the function is similar to a function which would have been immune when Congress enacted § 1983, and if a court determines that § 1983's history or purposes support special protection for the activity, then the court will recognize the absolute immunity of the official from damages liability. *Id.* at 268-69, 113 S.Ct. 2606. The official seeking absolute immunity bears the burden of showing such immunity is justified. *Malley,* 475 U.S. at 340, 106 S.Ct. 1092; *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606.

B.      *Qualified Immunity*

Even if a public official does not receive absolute immunity, the official may be entitled to qualified immunity for his actions. Qualified immunity shields a § 1983 defendant from liability for harms arising from discretionary acts,[2] so long as these acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Jenkins by Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 823 (11th Cir.) (en banc), *cert. denied,* --- U.S. ----, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997); *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc). To be clearly established, the contours of an asserted constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir.1997). "[I]n the light of pre-existing law, the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997).

---

[2]The parties do not dispute that Powers and Bishop were acting within their discretionary authority at all relevant times.

11

The Supreme Court and this Court have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034; *Walker v. Schwalbe,* 112 F.3d 1127, 1132 (11th Cir.1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."), *cert. denied,* --- U.S. ----, 118 S.Ct. 1794, 140 L.Ed.2d 935 (1998). "Qualified immunity focuses on the actual, specific details of concrete cases." *Id.* (citing *Lassiter,* 28 F.3d at 1149-50).

We now apply these principles of absolute and qualified immunity to this case.

*C.     Warrantless False Arrest*

Plaintiff Jones claims Defendants Powers and Bishop arrested him knowing that he had not confessed, and knowing that they did not have probable cause for his arrest absent that confession. An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause for the arrest.[3] *Lindsey v. Storey,* 936 F.2d 554, 562 (11th Cir.1991); *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir.1990). Qualified immunity will shield Powers and Bishop from a claim of false arrest without probable cause if there was arguable probable cause, i.e., if a reasonable police officer, knowing what Powers and Bishop knew, could have believed there was probable

---

[3]Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry. *See, e.g., Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997) ("As we have emphasized before, arguable probable cause is distinct from actual probable cause."), *cert. denied,* --- U.S. ----, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998); *id.* at 1446 ("We pause at this point to reemphasize that the arguable probable cause inquiry is distinct from the actual probable cause inquiry."); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."); *id.* ("We have repeatedly held that because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."); *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990) ("In determining whether qualified immunity exists, the issue is not probable cause in fact but arguable probable cause.") (internal quotation marks omitted).

cause for the warrantless arrest. *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997), *cert. denied, ---U.S. ----,* 119 S.Ct. 165, 142 L.Ed.2d 135 (1998); *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir.1995).[4]

Before the confession, Powers telephoned a state attorney, who advised Powers that there was no probable cause for Jones's arrest for the first degree murder of Murphy. Powers and Bishop later proceeded to arrest Jones for this murder based on Jones's confession to the murder as the sole probable cause for the warrantless arrest. Viewing the evidence in Jones's favor, there is sufficient evidence from which a jury could find that Jones did not confess during his interview with Powers and Bishop, and that Powers and Bishop knew that Jones had not confessed. No reasonable police officer, knowing these same facts, could have believed that there was probable cause to arrest Jones. Stated differently, absent the confession there was no

---

[4]Decisions of the Supreme Court and this Court make it clear that what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("Our cases establish that qualified immunity shields agents Hunter and Jordan from suit for damages if a reasonable officer could have believed Bryant's arrest to be lawful, in light of clearly established law and the information the arresting officers possessed.") (internal quotation marks and brackets deleted); *Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir.1998) ("An officer is entitled to qualified immunity where the officer had arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiffs.") (internal quotation marks omitted); *Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992) ("We therefore review the evidence known to [the defendant officers] with an eye to whether any reasonable officer would have sought arrest and search warrants based on that information."); *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990) ("Accordingly, applying the qualified immunity test in the context of Plaintiff's alleged unlawful arrest, we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff").

arguable probable cause for the warrantless arrest.[5]  Therefore, Powers and Bishop are not entitled to absolute or qualified immunity for the initial warrantless arrest of Jones on November 24, 1993.

We pause to observe that the record presents an issue of fact regarding whether Bishop was sufficiently involved in this initial warrantless arrest to be liable for false arrest.  Powers told Jones he was under arrest and Powers prepared the police report regarding Jones.  However, Bishop stayed with Jones while Powers called the state's attorney about probable cause for an arrest and Bishop was present during the interview when Jones allegedly did not confess.  Bishop also took notes from which Powers prepared the police report about the arrest.  More importantly, Powers and Bishop together transported Jones to jail.  Considering the present record in the light most favorable to Jones, there is sufficient evidence to create a jury issue over whether Bishop, knowing Jones had not confessed, participated with Powers in Jones's initial warrantless arrest on November 24.

Accordingly, this Court affirms the magistrate judge's denial of summary judgment to Powers and Bishop on this part of Count VII for Jones's initial warrantless arrest on November 24.  However, as outlined below, any liability of Bishop for Jones's detention arising from the initial warrantless arrest was cut off by the probable cause hearing before the magistrate judge on November 25.  In contrast, as explained below, any liability of Powers for Jones's detention from the initial warrantless arrest was not cut off until the grand jury's indictment on December 13, 1993.

D.      *Powers's Arrest Affidavit Presented at Probable Cause Hearing*

---

[5]Jones told inconsistent stories about his whereabouts and admitted to being with Murphy shortly before the murder, all of which may have provided arguable probable cause for the arrest even without Jones's alleged confession.  The advice given by the state's attorney about probable cause was only that—advice.  Whether a reasonable police officer could have believed that he had arguable probable cause would depend upon the underlying facts, such as the inconsistent stories and Jones's presence with Murphy, and not upon the opinion of the state's attorney.  In this case, we stress that Powers and Bishop have not contended that they had arguable probable cause without Jones's confession or that a reasonable police officer could have believed that probable cause was present absent the confession.  Therefore, we expressly do not reach the issue of whether a reasonable police officer could have believed he had probable cause to arrest Jones based on his inconsistent version of events and admitted presence with Murphy shortly before the murder.

After the warrantless arrest of Jones on November 24, Powers completed the arrest affidavit, wherein he swore that Jones had admitted causing Murphy's death, and used that confession as the sole basis for the probable cause for the continued detention of Jones. Moreover, Powers filed the affidavit specifically for it to be reviewed by the judge at the November 25 probable cause hearing in order to evaluate whether probable cause existed to continue to detain Jones. Nevertheless, Powers asserts that he is entitled to absolute or qualified immunity for his sworn statements, even if false, in the arrest affidavit because those sworn statements were part of a judicial proceeding to which immunity attaches.[6]

Powers's sworn arrest affidavit was for a judicial proceeding, namely, the probable cause hearing. Nonetheless, the function Detective Powers was performing was similar to that of the police officer in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and the prosecutor in *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), where the Supreme Court held there was no absolute immunity. Specifically, in *Malley,* the Supreme Court held that a police officer's submitting an affidavit seeking an arrest warrant from a state district court judge, though "a vital part of the administration of criminal justice," was too far removed from the judicial phase of criminal proceedings to be the kind of action entitled to absolute immunity. 475 U.S. at 342-43, 106 S.Ct. 1092.

Likewise, the Supreme Court has held that liability may also result from a prosecutor's false statements in an affidavit in support of a request for an arrest warrant from a county superior court. *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). In *Kalina,* the Supreme Court found that the prosecutor's actions were like those of a police officer or other competent witness in swearing to the facts that support a finding of probable cause, and therefore the prosecutor was not entitled to absolute immunity. *See Kalina,* 522 U.S. at ----, 118 S.Ct. at 508-09. Thus, under *Kalina* and *Malley,* Detective Powers does not

---

[6]Powers's allegedly false arrest affidavit relates not only to Jones's continued detention and damages flowing from that initial warrantless false arrest but also forms the basis of a separate substantive constitutional claim based on Powers's sworn testimony in that arrest affidavit itself.

15

enjoy absolute immunity for his allegedly false statements about the confession in the arrest affidavit, especially since Powers's statements were the sole basis asserted for probable cause in the arrest affidavit.[7]

Furthermore, the law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield Detective Powers from liability for such false statements, if such false statements were necessary to the probable cause. *Malley v. Briggs,* 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Whiting v. Traylor,* 85 F.3d 581, 585 n. 5 (11th Cir.1996); *Kelly v. Curtis,* 21 F.3d 1544 (11th Cir.1994) (following *Malley* and holding police officer not entitled to qualified immunity in § 1983 claim based on officer's false statements in 1989 affidavit submitted to magistrate judge for arrest warrant at warrant hearing); *United States v. Martin,* 615 F.2d 318, 327-29 (5th Cir.1980) (applying rule regarding false statements in a search warrant in *Franks v. Delaware,* 438 U.S. 154, 156, 165-71, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to perjurious statements used to obtain an arrest warrant).[8]

---

[7]Defendants assert that this case is different than *Malley* and *Kalina* because in Florida, a law enforcement officer is required to submit a sworn probable cause affidavit and thus, Defendants argue, the probable cause affidavit should be considered an integral part of judicial proceedings for which the law enforcement officer should be entitled to absolute immunity.

First, we note that the dispute in *Kalina* involved a Washington State rule that requires an affidavit, but, similar to Fla. R.Crim. P. 3.130 and 3.133, does not designate who must make the submission. *Kalina,* 118 S.Ct. at 505 & n. 1; Fla. R.Crim. P. 3.133(a)(3). Second, to the extent Defendants attempt to distinguish *Kalina* by arguing that the prosecutor in *Kalina* went beyond the requirement of an affidavit and personally vouched for the truth of the facts, 522 U.S. at ----, 118 S.Ct. at 505, Powers personally vouched in his arrest affidavit that Jones had admitted to the murder of Murphy.

[8]This Court also has held that the magistrate judge's decision to issue an arrest warrant, based on false statements necessary to the probable cause, does not absolve the police officer from liability, where the police officer who applied for the warrant used false statements to establish probable cause. *Garmon v. Lumpkin County, Ga.,* 878 F.2d 1406, 1408-09 (11th Cir.1989). Likewise, a subsequent grand jury indictment does not retroactively provide probable cause for a false arrest that had already taken place. *Garmon,* 878 F.2d 1406, 1408-09 n. 2 (11th Cir.1989). While the indictment cuts off the length of detention, and thus damages, stemming from the false arrest, the indictment does not absolve the officer from liability for the initial false arrest made without any arguable probable cause.

16

Because Bishop did not prepare the arrest affidavit, Jones at best seems to imply that Bishop is somehow charged with presuming that Powers must have put the alleged false confession in the arrest affidavit. Although Jones mainly aggregates his claims against Powers and Bishop, at most Jones could argue that Bishop was required to undertake an investigation of the arrest affidavit to determine what Powers was doing and what Powers put in the arrest affidavit to continue Jones's detention, and that Bishop was constitutionally obligated to intervene to stop the initial detention from the warrantless arrest continuing past the probable cause hearing based on the same false confession.

While officers have been subject to liability for failing to intervene when another officer uses excessive force, *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441-42 (11th Cir.1985), there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene and is therefore liable under the circumstances presented here. There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct. As discussed, a police officer is entitled to qualified immunity when performing discretionary functions unless the officer has violated a clearly established right of which a reasonable police officer would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). At a minimum, Jones has not shown that Bishop's failing to intervene to stop Powers's conduct violates any clearly established right of which a reasonable police officer would have known. Additionally, since Jones's detention as of November 25 arose from Powers's arrest affidavit at the probable cause hearing, this cut off any damages potentially recoverable from Bishop due to Bishop's involvement in the initial warrantless arrest.

The magistrate judge correctly denied Powers absolute and qualified immunity in Count VII for the allegedly false statements about the confession in the arrest affidavit as the confession was the sole basis given in the arrest affidavit for probable cause for the arrest and continued detention of Jones. However, the magistrate judge erred in denying Bishop's motion for summary judgment on this claim.

17

*E.      Grand Jury, Pre-trial, and Trial Testimony*

While immunity does not shield Powers from liability for a warrantless false arrest or a false arrest affidavit, Detective Powers is absolutely immune from a § 1983 civil action for his testimony, even if false, before the grand jury. *Kelly v. Curtis,* 21 F.3d 1544, 1553 (11th Cir.1994); *Strength v. Hubert,* 854 F.2d 421 (11th Cir.1988). Detectives Powers and Bishop are also absolutely immune from a § 1983 civil damages action for their testimony as witnesses during Jones's criminal trial and during pre-trial depositions. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Indeed, the *Briscoe* Court reasoned that absolute immunity is even more necessary for police officer witnesses than for lay witnesses. The reason is that, "Police officers testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses." *Id.* at 343, 103 S.Ct. 1108. If a police officer witness "could be made to answer in court each time a disgruntled defendant charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Id.* at 343-44, 103 S.Ct. 1108 (internal brackets and quotation marks omitted). That is why the Court emphatically rejected the notion that an exception to the doctrine of absolute immunity for witnesses should exist when a police officer is alleged to have committed perjury during a criminal trial. *See id.* at 341-45, 103 S.Ct. 1108.[9]

Accordingly, Powers and Bishop were entitled to summary judgment on Jones's claims against them in Count VII based on their pre-trial depositions and trial testimony, and on Powers's grand jury testimony.

Before leaving the issue of grand jury testimony, we point out that the grand jury indictment broke the chain of causation for the detention from the alleged false arrest and Jones may recover damages only for his detention prior to the grand jury indictment. *See Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.1989).

---

[9]The doctrine is one of immunity from civil liability, and of course does not protect a witness from prosecution for perjury. Even a witness forced to testify by a grant of immunity from prosecution for other crimes may be prosecuted criminally for perjury. *See United States v. Veal,* 153 F.3d 1233, 1240-41 (11th Cir.1998), *petition for cert. filed,* (Jan. 29, 1999) (No. 98-7878). The Supreme Court recognized in *Briscoe* that the immunity doctrine only applies to civil liability. *See* 460 U.S. at 341 n. 26, 103 S.Ct. 1108.

18

The intervening acts of the prosecutor in presenting the murder case to the grand jury and of the grand jury returning the indictment broke the chain of causation for any detention of Jones that followed the grand jury indictment. Jones does claim that Powers's false grand jury testimony deceived the grand jury. However, we disagree that this prevents the grand jury indictment from breaking the chain of causation in this case. "We previously have decided that a witness has absolute immunity from civil liability based on his grand jury testimony" and have concluded that "we are prohibited from using [a law enforcement officer's] grand jury testimony as a basis to impose civil liability." *Mastroianni v. Bowers,* --- F.3d ----, No. 95-8107, op. at 14 (11th Cir., Apr. 29, 1999) (citing *Strength,* 854 F.2d at 425, and pointing out *Strength* relied on *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). Allowing Powers's grand jury testimony to subject Powers to additional civil damages on the false arrest claim for post-indictment detention would significantly erode Powers's absolute immunity from civil liability for false grand jury testimony.[10] False

_____

[10]This Court in *Mastroianni* pointed out in a footnote that several circuits have carved out exceptions to the doctrine of absolute immunity for testifying witnesses, but declined to decide whether that "case challenges the previously delineated limits of our doctrine of absolute immunity." For several reasons, we expressly reject carving out an exception to absolute immunity for grand jury testimony, even if false and even if Powers were construed to be a complaining witness. First, although *Mastroianni* cites circuits adopting an exception for complaining witnesses, we agree with the Third Circuit's rejection of that approach and its observation that *Malley* does not affect the broad witness protection adopted for law enforcement officers in *Briscoe. Kulwicki v. Dawson,* 969 F.2d 1454, 1467 n. 16 (3d Cir.1992). The Third Circuit rejected the reasoning of *White v. Frank,* 855 F.2d 956 (2d Cir.1988), one of the cases cited in the footnote in *Mastroianni. Id.*

Second, this case vividly illustrates the serious problems with carving out such an exception and imposing civil liability for post-indictment detention based on Powers's false testimony deceiving the grand jury. To prove or to defend against such a claim would necessitate depositions from the prosecutor, the grand jury witnesses, and the grand jury members. Thus, allowing Powers's grand jury testimony, even if false, to subject Powers to additional civil damages on the false arrest claims for Jones's post-indictment detention, in effect, would emasculate both the absolute immunity for grand jury testimony and the confidential nature of grand jury proceedings. The remedy for false grand jury testimony is criminal prosecution for perjury and not expanded civil liability and damages.

Alternatively, we find Jones never presented evidence that the grand jury relied on and indicted based on Powers's grand jury testimony. Although Powers admitted in his deposition telling the grand jury about Jones's confession, no record evidence shows what additional evidence the prosecutor presented to the grand jury or what the grand jury relied on in its decision to indict. Therefore, Jones has not provided sufficient evidence to create a factual issue over

19

grand jury testimony cannot directly impose civil liability on Powers, and it likewise cannot be used indirectly to impose civil liability for expanded damages on the false arrest claim.[11]

F.      *Subornation of Perjured Testimony at Trial*

Powers and Bishop also seek summary judgment on Jones's claims that they suborned false testimony by Jones's cell mate at the trial. As Jones does not produce any evidence that Bishop was involved with the cell mate's testimony, Bishop is entitled to summary judgment on this part of Jones's § 1983 claim in Count VII. Whether Powers has absolute immunity from liability in a § 1983 action for allegedly suborning perjured testimony from Jones's cell mate presents an issue of first impression in this Circuit.

The majority of circuits that have addressed the issue have extended the absolute immunity for a witness's trial testimony under *Briscoe* to those persons who allegedly conspired with the witness to present allegedly false testimony. *See Hunt v. Bennett,* 17 F.3d 1263, 1267-68 (10th Cir.1994) (holding prosecutor and police officer-witness absolutely immune from claim of conspiring to present false testimony); *Snelling v. Westhoff,* 972 F.2d 199, 200-01 (8th Cir.1992) (per curiam) (holding prosecutor, state conservation agent, and witness absolutely immune from claim of conspiring to present false testimony); *House v. Belford* 956

----

whether the grand jury relied upon Powers's testimony in deciding to indict Jones. *See Barts v. Joyner,* 865 F.2d 1187, 1196 (11th Cir.1989) (stating "[p]laintiff introduced no evidence that the intervening acts of the prosecutor, grand jury, judge or jury were caused by any deception or undue pressure by [the defendants]").

[11]We observe that there is dicta in *Barts* implying that a grand jury indictment might not break the chain of causation from an unlawful pre-grand jury arrest, if the plaintiff can prove that the indictment was the result of deception or undue pressure by defendant officers. *See Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.1989). However, in *Barts* there was apparently no contention, much less any evidence, that the defendant officials in the *Barts* case had deceived or unduly pressured the grand jury to indict. The issue of whether deception of or undue pressure upon the grand jury could result in liability for the defendant officers was not presented in *Barts* and therefore that issue could not have been decided in that case.

This Circuit has held that dicta cannot clearly establish the law for qualified immunity purposes. *Hamilton v. Cannon,* 80 F.3d 1525, 1530 (11th Cir.1996); *see also Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting) (even Supreme Court dicta cannot clearly establish the law for qualified immunity purposes), *adopted en banc,* 998 F.2d 923 (11th Cir.1993).

20

F.2d 711, 720-21 (7th Cir.1992) (concluding that, for testimony given during a post-conviction hearing, both the prosecutor and trial prosecutor-witness are absolutely immune for § 1983 conspiracy claim based on trial prosecutor-witness's allegedly false testimony at hearing); *Alioto v. City of Shively, Ky.,* 835 F.2d 1173, 1174 (6th Cir.1987) (holding police officer-witnesses absolutely immune on § 1983 claims based on conspiracy to present false testimony before a grand jury). In these cases, the circuit courts held that prosecutors and witnesses have absolute immunity for claims of conspiracy to commit perjury based on a witness's allegedly false testimony at trial, before a grand jury, or at a post-conviction hearing.

The Second Circuit, however, declined to afford absolute immunity to witnesses for conspiracy to commit perjury. *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 255 (2d Cir.1984) (holding that witnesses were not entitled to absolute immunity for alleged conspiracy in giving false testimony before a grand jury); *see also Malachowski v. City of Keene,* 787 F.2d 704, 711 (1st Cir.1986) (citing *San Filippo* with approval and commenting in dicta that "proper allegations of conspiracy could overcome [prosecutorial] immunity."); *but see Dory v. Ryan,* 25 F.3d 81, 83-84 (2d Cir.1994) (limiting *San Filippo* and holding that prosecutors are absolutely immune from claims alleging conspiracy to present false testimony, but witnesses, including police officer-witnesses, are not absolutely immune from such claims).

Although Jones presses a claim that Powers suborned perjured testimony from a trial witness[12] and not a claim for conspiracy to present perjured testimony at trial, we believe the reasoning of these cases applies equally here.[13] We concur with the Seventh Circuit that "the Second Circuit's effort to differentiate between a conspiracy to present perjured testimony and the act of presenting perjured testimony is a

[12]Black's Law Dictionary defines "subornation of perjury" as: "The offense of procuring another to take such a false oath as would constitute perjury in the principal." Black's Law Dictionary 1426 (6th ed.1990). The essence of Jones's allegation is that Powers procured Jones's cell mate's allegedly false testimony at trial.

[13]In *Strength v. Hubert,* 854 F.2d 421 (11th Cir.1988), this Court provided absolute immunity to defendants faced with § 1983 claims for allegedly false grand jury testimony, but permitted other claims in the nature of false arrest or malicious prosecution to proceed. *Strength,* 854 F.2d at 425. That case did not present the issue before this Court, namely, whether absolute immunity shields a police officer from liability on an independent § 1983 claim for subornation of perjured testimony at trial.

21

distinction without a difference. A person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *House,* 956 F.2d at 720. Because Jones's cell mate has absolute immunity for any false testimony at trial, absolute immunity also shields Powers from § 1983 liability for allegedly procuring that false testimony at trial. Likewise, we agree with the Tenth Circuit, which "expressly repudiated *San Filippo,*" *Hunt,* 17 F.3d at 1267, and reasoned that:

> Allowing criminal defendants to seek damages under § 1983 for *conspiracy* among state witnesses to offer false testimony would give rise to the same systemic concerns noted in *Briscoe.* Instead of suing state witnesses for perjured testimony, a defendant could simply transform the perjury complaint into an allegation of a conspiracy to do the same. Moreover, an extension of *Briscoe* prevents self-censorship on the part of witnesses due to the fear of civil liability....

> .   .   .   .   .

> ... [W]e conclude that the extension of absolute immunity from civil liability to those who allegedly conspire to present perjured testimony in furtherance of a criminal conviction serves the same important purposes of immunity to witnesses themselves.

*Miller v. Glanz,* 948 F.2d 1562, 1571 (10th Cir.1991). We concur with the Tenth Circuit that the extension of absolute immunity from civil liability to those who allegedly procure the perjured testimony serves the same important purposes as immunity to witnesses themselves. *Id. See also Alioto,* 835 F.2d at 1174.

To allow a § 1983 claim based on subornation of perjured testimony where the allegedly perjured testimony itself is cloaked in absolute immunity would be to permit through the back door what is prohibited through the front. Accordingly, we find Defendant Powers has absolute immunity from liability for Jones's § 1983 claim that Powers suborned perjured testimony from Jones's cell mate, and is entitled to summary judgment for this claim in Count VII.

G.     *Fabricated Boot Print*

 We now turn to Jones's claims about the fabricated boot print. The luminol testing of the crime scene and the procurement of Jones's boot were part of the homicide investigation and were more closely associated with the police officer's investigative role than with preparation for trial. Accordingly, Detective Powers's investigative work with the allegedly fabricated boot print is not entitled to absolute immunity. *See Buckley*

22

*v. Fitzsimmons,* 509 U.S. 259, 273-74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (holding that a prosecutor who engaged in investigatory functions normally performed by police officers was not entitled to absolute immunity).

Using or planting false evidence in an effort to obtain a conviction violates the Constitution. *Napue v. Illinois,* 360 U.S. 264, 268-70, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Riley v. City of Montgomery, Ala.,* 104 F.3d 1247, 1253 (11th Cir.1997). This court has held that it was well established "that fabricating incriminating evidence violated constitutional rights." *Riley,* 104 F.3d at 1253 (holding that officer did not have qualified immunity from § 1983 malicious prosecution claim where question of fact existed regarding whether officer planted cocaine in plaintiff's car). Since Jones's evidence creates a fact question about whether Powers fabricated the boot print, Powers also is not entitled to qualified immunity on this claim of Count VII.

However, the magistrate judge erred by denying summary judgment to Bishop on this claim. Jones offers no evidence that Bishop was involved in procuring Jones's boot, or in the subsequent luminol testing of Murphy's apartment. Jones does not even allege enough to state a claim against Bishop for the allegedly fabricated boot print.

One argument of the Defendants merits additional discussion. Defendants contend that any alleged investigative misconduct, whether the alleged fabricated confession or the alleged planting of the boot print, only become actionable when used as evidence to convict Jones. Contending that the constitutional violation occurs only when the detectives use the fabricated evidence by testifying about it to a grand jury or a judge, Defendants assert that they should be entitled to testimonial immunity for all of the pre-indictment conduct at issue. In *Buckley,* the Supreme Court rejected a similar argument that a prosecutor's later use before a grand jury of evidence produced from the prosecutor's investigative work entitles the prosecutor to absolute immunity for the investigative work. The Supreme Court stated that later use of testimony does not "retroactively transform that work from administrative into the prosecutorial." 509 U.S. at 276, 113 S.Ct.

23

2606. The Supreme Court concluded that investigative officers cannot cloak their misconduct during an investigation in absolute immunity merely by presenting the fabricated evidence or testifying about it in a grand jury hearing or trial. *Id.* at 275-76, 113 S.Ct. 2606. The focus must be on the nature of the actions performed at the time they are performed. *Id.* Thus, the magistrate judge correctly denied Detective Powers qualified immunity and summary judgment on Count VII for the allegedly false arrest affidavit and fabricated boot print but erred in denying Bishop summary judgment on this claim.

H.       *Continued Questioning Without an Attorney*

The parties dispute whether *Miranda* warnings were given and at what point Jones requested an attorney. Assuming no *Miranda* warnings were given and that Powers and Bishop continued questioning Jones after he was in custody and requested an attorney, Powers and Bishop nonetheless are entitled to summary judgment on Jones's *Miranda* claims.

This case presents an issue of first impression in this circuit whether a plaintiff can state a cause of action for money damages under § 1983 if the plaintiff alleges that he was not read his *Miranda* rights or that the police officers continued questioning him despite his request for counsel. Before discussing immunity, the threshold inquiry is whether Plaintiff Jones has asserted a violation of a constitutional right in order to state a cause of action under § 1983.

Several circuits have held that no cause of action for money damages exists under § 1983 where police officers allegedly violate *Miranda* principles by either failing to give *Miranda* warnings or by continuing to question a defendant in custody after his request for an attorney. The Third Circuit held that "[t]he right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in *Miranda v. Arizona,* is merely a procedural safeguard, and not a substantive right." *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994) (citation omitted). The Tenth Circuit agrees and recognizes that the remedy is to

24

exclude the ill-gotten confession from evidence, and not to subject police to civil liability for either failing to give *Miranda* warnings or for continuing to question a defendant in custody after he requests an attorney:

> Even assuming that [plaintiff's] confession should have been excluded from the evidence at his trial, the court cannot find that any rational argument can be made in support of this civil rights claim for damages. The Constitution and laws of the United States do not guarantee [plaintiff] the right to Miranda warnings. They only guarantee him the right to be free from self-incrimination. The Miranda decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give Miranda warnings subjects a police officer to liability under the Civil Rights Act.

*Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976). "[V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself." *Giuffre,* 31 F.3d at 1256. *See also Warren v. City of Lincoln, Neb.,* 864 F.2d 1436, 1442 (8th Cir.1989) ("The reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself.... Thus, the remedy for a *Miranda* violation is the exclusion from evidence of any compelled selfincrimination, not a section 1983 action"); *Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir.1968) (holding that failure to give *Miranda* warnings would prevent use of statements in a criminal trial, but has no significance in an action against police officers for deprivation of a plaintiff's civil rights.).

Jones relies on a Ninth Circuit decision, *Cooper v. Dupnik,* 963 F.2d 1220 (9th Cir.1992) (en banc), in which the Court held that a § 1983 cause of action exists against officials who purposely planned to deprive criminal suspects of their *Miranda* rights in order to coerce involuntary confessions. However, as observed by the Third Circuit, the *Cooper* case broke new ground, and was decided under an unusual fact situation. *Giuffre,* 31 F.3d at 1256. In *Cooper,* the defendant law enforcement officers admitted they engaged in a pre-existing interrogation plan whereby they ignored the suspect's repeated requests to speak with an attorney, deliberately infringed on his right to remain silent, and relentlessly interrogated him in an attempt to extract a confession. 963 F.2d at 1223-32. As noted by the dissent in *Cooper,* the majority acted with "zeal to respond forcefully to deplorable police conduct in [that] case." 963 F.2d at 1256 (Brunetti, J., dissenting).

We agree with the dissent that "the majority has departed from the clear requirements for § 1983 actions." *Id.* Rather, "[b]ecause the violation of the *Miranda* procedure alone is not a violation of the Fifth Amendment, a remedy under 42 U.S.C. § 1983 is not available." *Id.* at 1253 (Brunetti, J., dissenting).

We agree with the Third, Seventh, Eighth, and Tenth Circuits that failing to follow *Miranda* procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created. At a minimum, the magistrate judge erred in finding that the Defendants Powers and Bishop were not entitled to qualified immunity on Jones's *Miranda* claims in Count VII, as there was no clearly established right in this Circuit.[14]

I.      *Post-Acquittal Harassment*

Jones contends that after his June 1994 acquittal, he was harassed by the Defendants and subject to false arrest by Powers in October 1994, and false arrest and excessive force by Deputy Arnew of the Pasco County Sheriff's Office in April 1995.

Defendants argue that Jones's Amended Complaint fails to state adequately a claim for "post-acquittal harassment", or that, in the alternative, Defendants enjoy immunity for this claim. In response, Jones's brief on appeal abandons any separate claim for "post-acquittal harassment", stating that Jones sues only for false arrest and excessive force:

> [Jones] does not plead a separate claim for post-acquittal harassment. Instead, [Jones] contends false arrests and excessive use of force which have occurred after his June 11, 1994 acquittal, are separately violative of his Fourth and Fourteenth Amendment rights.

---

[14]Jones acknowledges that the Sixth Amendment right to counsel is not at issue here. Were Jones to pursue a Sixth Amendment claim, it would also fail, as the alleged denial of counsel here occurred prior to any critical stage, which would have triggered the Sixth Amendment right.

Also, according to Appellee Jones's brief, Jones first requested counsel while speaking with Cindy Long at the Sheriff's Office, which the record indicates occurred after the alleged confession and after Powers had told Jones that he was under arrest. In at least one pleading in the district court, however, Jones argues that he requested counsel as early as the first interview at Jones's parents' home. In any case, because no cause of action exists under § 1983, this claim must be dismissed however early Jones alleges he requested counsel.

For example, [Jones] may establish detective Powers engaged in an unlawful stop in October 1994 and maliciously prosecuted him by writing out a ticket for a traffic violation Powers knew [Jones] did not commit. Similarly, [Jones] may establish his April 1995 arrest arising from the traffic stop and pepper spray incidents were constitutional violations. If so, [Jones] is also entitled to recover damages arising from this misconduct.

(Appellee's Br. at 31.) Thus, all Defendants are entitled to summary judgment to the extent Jones seeks to recover based on a separate claim of "post-acquittal harassment".

Moreover, neither of the two specific incidents in October 1994 or April 1995 described by Jones involved Detective Bishop, and therefore Bishop individually is entitled to summary judgment for any false arrest or excessive force claims based on these incidents. In addition, although the Amended Complaint appears to allege an official capacity claim based on "post-acquittal harassment" by the Sheriff's Office, Jones has failed to produce evidence of any policy, custom, or practice of the Pasco County Sheriff's Office that is the moving force behind his harassment, and therefore any official capacity claim against Sheriff Cannon with respect to Defendants' post-acquittal conduct must also be dismissed. *See Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.), *cert. denied,* --- U.S. ----, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998).

In contrast, Jones does adequately describe at least one post-acquittal alleged false arrest involving Detective Powers. Viewing the record in the light most favorable to Jones, we conclude that Jones has articulated a viable § 1983 claim against Powers based on his allegedly false traffic arrest of Jones without arguable probable cause in October 1994, after Jones was acquitted of the murder charges. If the jury believed Jones's version of the events, Powers issued a traffic citation to Jones for following Powers's vehicle too closely when Powers knew Jones had not done so and that there was no arguable probable cause for the traffic stop and traffic citation. Accordingly, Powers is entitled to summary judgment on all of Jones's claims of "post-acquittal harassment" in Count VII except for Jones's allegations against Powers relating to only the alleged false traffic arrest in October 1994 without arguable probable cause.

*J.      Sheriff Cannon in Official Capacity*

27

Sheriff Cannon appeals the denial of summary judgment on Jones's § 1983 claim against him in his official capacity.  Jones's § 1983 claim asserts that the Sheriff's Office had a custom and policy that confessions need not be tape recorded, documented, or otherwise memorialized so that its officers "could assert confessions occurred when in fact they had not, and to deny the Fifth Amendment Rights of suspects to remain silent or to counsel."  (Am. Compl. at 5, ¶ 16.)

Jones's § 1983 claim against Sheriff Cannon in his official capacity does not involve issues of absolute or qualified immunity and denial of summary judgment to Sheriff Cannon in his official capacity is thus not subject to interlocutory appellate review.[15]  Although interlocutory review of the immunity available to Defendants Bishop and Powers individually is permissible, there is no pendent party appellate jurisdiction to permit us to review the claim against a separate defendant, Sheriff Cannon in his official capacity because immunity issues are not inextricably interwoven in that claim.  *See, e.g., Pickens v. Hollowell,* 59 F.3d 1203, 1208 (11th Cir.1995);  *Haney v. City of Cumming,* 69 F.3d 1098, 1102 (11th Cir.1995).

K.      *State Law Claims*

Lastly, Defendants appeal the denial of summary judgment on Jones's state law claims against them. Specifically, the magistrate judge denied summary judgment to Defendants on Jones's state law claims of:

---

[15]On appeal and before the magistrate judge, counsel for Sheriff Cannon assert only that Sheriff Cannon is not liable for Powers's and Bishop's acts.  Specifically, Sheriff Cannon's counsel argued that whether Powers's and Bishop's actions resulted from a custom and policy is "an irrelevant inquiry" because no derivative liability may be imposed against Sheriff Cannon since Powers and Bishop are absolutely immune.  Sheriff Cannon's counsel misapprehends the nature of Jones's § 1983 claims against Sheriff Cannon in his official capacity.  Official capacity claims are not governed by the doctrines of derivative or vicarious liability, but are based on a Sheriff's Office's policies or customs purportedly causing the alleged constitutional violations.  Official capacity claims are tantamount to a suit against the governmental entity involved, here the Sheriff's Office. *See Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  There is no respondeat superior making Defendant Cannon in his official capacity or the Sheriff's Office liable for the wrongful acts of its officers, whether immunity exists or not for Powers and Bishop. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978);  *Baskin v. Parker,* 602 F.2d 1205, 1207-08 (5th Cir.1979). *See e.g., Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489-90 (11th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998);  *Young v. Augusta, Ga. Through DeVaney,* 59 F.3d 1160, 1171-72 (11th Cir.1995);  *Hill v. Dekalb Reg'l Youth Detention Ctr.,* 40 F.3d 1176, 1195 (11th Cir.1994).

28

malicious prosecution against all Defendants individually; and intentional infliction of emotional distress, false arrest, and false imprisonment against Powers and Bishop individually.

Although claims of absolute or qualified immunity under federal law are entitled to interlocutory review under the collateral order doctrine, *Mitchell v. Forsyth,* 472 U.S. 511, 526-28, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Florida Supreme Court and this Court have determined that claims of sovereign immunity under Florida state law are not entitled to interlocutory review. *CSX Transp., Inc. v. Kissimmee Util. Auth.,* 153 F.3d 1283, 1286 (11th Cir.1998) (observing that qualified immunity, like Eleventh Amendment immunity, is immunity from suit or trial, whereas Florida sovereign immunity is immunity only from liability or damages but not from suit itself); *Department of Educ. v. Roe,* 679 So.2d 756, 758-59 (Fla.1996); *City of Sanford v. Matthews,* 681 So.2d 865 (Fla.App. 5 Dist.1996). *But see Buchanan v. Miami Herald Publ'g Co.,* 230 So.2d 9 (Fla.1969) (suggesting that Florida's privilege against malicious prosecution for people who testify before a grand jury is an immunity from suit, and not just an immunity from liability).

Further, the doctrine of pendent appellate jurisdiction counsels against accepting interlocutory review of the state law claims against the Defendants individually in this case for two reasons. First, certain federal claims against Defendants Bishop and Powers individually, and against Defendant Cannon in his official capacity, survive summary judgment. Therefore, Jones's case against them must proceed to trial regardless of any ruling on their immunity under state law. *See Swint v. City of Wadley, Ala.,* 51 F.3d 988, 1003 (11th Cir.1995). Second, the parties' motions for summary judgment before the magistrate judge and the briefs on appeal focused more on federal immunity issues rather than sovereign immunity under state law or the merits of Jones's state law claims. Thus, those state law issues should be tested and briefed more fully in the trial court first, and then, if necessary, considered here.

Accordingly, we decline to review the Defendants' appeal of the magistrate judge's denial of summary judgment on Plaintiff's state law claims in Counts III through VI of the Amended Complaint.

IV. SUMMARY

29

We affirm in part and reverse in part the magistrate judge's summary judgment order.

Regarding Defendant Powers, we reverse the denial of summary judgment for Defendant Powers individually on all § 1983 claims in Count VII based on:  (a) Powers's grand jury, pre-trial, and trial testimony;  (b) on Powers's suborning perjury from Jones's cell mate;  (c) on Powers's failing to give *Miranda* warnings and continuing to question Jones after Jones was in custody and requested counsel.  However, we affirm the magistrate judge's denial of summary judgment for Defendant Powers individually on Jones's § 1983 claims in Count VII based on the alleged warrantless false arrest, false arrest affidavit, and fabrication of a boot print as evidence.

Regarding Defendant Bishop, we reverse the magistrate judge's denial of summary judgment for Defendant Bishop individually on all of Jones's § 1983 claims in Count VII, except for Jones's § 1983 claim against Bishop for the alleged warrantless false arrest resulting in the detention from November 24 until the probable cause hearing on November 25 before the magistrate judge.  We affirm the magistrate judge's denial of summary judgment to Bishop individually on the false arrest claim in Count VII for that limited detention period.

Regarding Defendant Cannon in his official capacity, there is no pendent party appellate jurisdiction to review the denial of summary judgment for Defendant Sheriff Cannon on all § 1983 claims in Count I against Cannon in his official capacity.

The Court declines to exercise its pendent appellate jurisdiction to reach the question of sovereign immunity with respect to Jones's state law claims against Defendants individually.

AFFIRMED IN PART and REVERSED IN PART.