[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12257
Non-Argument Calendar

_____

D. C. Docket No. 05-00030-CV-WLS-1

WOODSON R. HART,

Plaintiff-Appellant,

versus

KENNETH B. HODGES, III,
in his individual capacity,
WILLIAM AMIDEO,
in his individual capacity, and
FREDERICK HEAD,
in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 17, 2009)

Before HULL, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Woodson R. Hart ("Hart"), previously convicted of state and federal charges of bribery and perjury, filed suit against the Defendants-Appellees for allegedly violating his constitutional rights by having him transferred from federal to state custody at the end of his federal sentence. The three Defendants are Kenneth B. Hodges, III, former District Attorney of Dougherty County, Georgia ("Hodges"), William Amideo, the General Counsel of the Georgia Department of Corrections ("Amideo"), and Warden Frederick Head of the Jackson State Prison in Georgia ("Head"). The district court granted the Defendants' motion for judgment on the pleadings on the ground that absolute immunity prevented all civil liability against them. After review, we affirm in part, vacate in part, and remand.

## I. FACTUAL BACKGROUND

Hart's 175-paragraph Second Amended Complaint alleges these facts.[1]

### A. Hart's Plea Agreements

Plaintiff Hart was the Assistant Chief of Police of the Dougherty County, Georgia Police Department. In 2000, in federal court in Georgia, Hart was indicted

---

[1]We review a district court's decision on a motion for judgment on the pleadings de novo. Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1213 (11th Cir. 2001). On a motion for judgment on the pleadings, we accept all facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff. Id.

on three felony charges of false declaration before a grand jury, wire fraud, and engaging in monetary transactions in property derived from a specific unlawful activity, all in connection with an unlawful payment he allegedly received in exchange for declining to investigate a blackmail scheme. Around the same time, Hart also was indicted on eight state felony charges in state court, all arising out of the same events.

Hart entered into plea negotiations with the prosecuting Assistant United States Attorney in the federal case and Defendant Hodges in the state case. Pursuant to plea agreements in both cases, Hart agreed to plead guilty in exchange for a recommendation from the Assistant United States Attorney for a federal sentencing range of 18 to 24 months' imprisonment, followed by supervised release. Hart agreed to plead guilty in exchange for an agreement that his state sentence would be the same as his federal sentence and that the state and federal sentences would run concurrently. On February 27, 2001, the federal district court sentenced Hart to 27 months' imprisonment.

The "State Plea and Sentence Recommendation," signed two days after Hart's federal sentencing, stated that District Attorney Hodges would recommend a total state sentence of 10 years, to be served by a term "in Prison/Jail [of] 27 months," concurrent with the "Federal sentence," followed by a term of probation

3

of 93 months.[2]

On March 1, 2001, Plaintiff Hart appeared at a sentencing hearing in the state case. Defendant Hodges explained the 27-month federal sentence and stated that Hart's agreement with the state called for a sentence of 27 months followed by 93 months of probation, to run concurrent with his federal sentence. Hodges and the state trial court agreed with Hart's attorney's statement that Hart would receive no more time to serve under the state sentence than under the federal sentence:

> [HART'S COUNSEL]: Your Honor, I – I – everything Mr. Hodges said, of course, is true. The only thing I would like to add to that is that, as the plea agreement points out, the sentence to be handed down by Your Honor is to run concurrent with the Federal sentence, so that actually he's getting no more time to serve that [sic] what he's already serving in the Federal institution.
> THE COURT: Okay.
> MR. HODGES: I though [sic] I'd said that, but that's correct.
> [HART'S COUNSEL]: You may have. If so I . . .
> MR. HODGES: That is correct.

## B. Detainer Lodged Against Hart

On April 16, 2001, Hart began serving his 27-month federal sentence at the Federal Correctional Institution in Forrest City, Arkansas (the "federal prison").

---

[2]As to the state sentence, Hart's federal plea agreement also provided: "The District Attorney and Defendant agree to a sentence in the State case of ten years, which term will be composed of: (a) a term of imprisonment in an amount equal to the term of imprisonment imposed by [the district court], which term will run *concurrent* with the term of imprisonment imposed by [the district court], and (b) a term of probation in an amount equal to the remainder of the ten year sentence following the term of imprisonment." (emphasis in original).

At some point during his federal detention, federal prison officials decided Hart would be released from the federal prison after a term of 24 months, three months earlier than the full 27-month sentence. This meant Hart's federal release would be on March 14, 2003. Defendant Hodges "prevailed upon" the Georgia Department of Corrections (the "Georgia DOC") to issue a State Warrant, dated June 6, 2001 (the "first state warrant"), to be lodged as a detainer against Hart so that he would be detained upon his release from the federal prison.

## C. State Court Removes Detainer

In January 2003, Hart filed a motion for a new hearing on his sentencing with the state trial court judge who sentenced Hart originally. Defendant Hodges appeared at the state court hearing on Hart's sentencing motion. On February 20, 2003, the state trial court ordered (1) that the detainer placed against Hart by the Georgia DOC (through Hodges's actions) be removed; and (2) that: "Hart will serve no additional time in any state correctional facility once he is released March 14, 2003 from the federal facility where he is currently serving" (hereinafter, the "second state sentence").

On March 12, 2003, Defendant Hodges filed a notice of appeal of the state trial court's February 20, 2003 second state sentence.

At the prompting of Defendants Hodges or Amideo, the Georgia DOC

5

issued a second "State Warrant," dated March 12, 2003, instructing federal prison officials and Arkansas state law enforcement officials to "retake [Hart] wherever he may be found for his return to the State Penitentiary of Georgia" (the "second state warrant").  Defendant Hodges also allegedly called the Sheriff's Office of Cross County, Arkansas, where the federal prison is located, and persuaded law enforcement officers there to detain Hart upon his release from federal custody, to transfer him to the Cross County, Arkansas Jail, and to hold him until Hodges could arrange for Hart to be transported to Georgia.

**D.    Events of March 14-17, 2003**

Hart was released from the federal prison at approximately 8:00 a.m. on Friday, March 14, 2003.  An officer from the Cross County, Arkansas Sheriff's Office picked up Hart from the federal prison, detained Hart in shackles, and transported him to the Cross County Jail.

On March 14, 2003, Defendant Amideo faxed a copy of the second state warrant to the Cross County Sheriff's Office and instructed Cross County officials to detain Hart until he could be taken into custody by officers of Dougherty County, Georgia, or, if he could not be detained, that he be served with an enclosed copy of a notice to surrender.  The separate notice to surrender, dated March 14, 2003, and also signed by Amideo, ordered Hart to surrender to the Jackson State

6

Prison in Jackson, Georgia (the "Georgia prison") at 8:00 a.m. on Monday, March 17, 2003. It further informed Hart: "Failure to surrender at the above appointed place and time may result in the violation of any existing conditions of probation which you have and/or the commission of a new offense of escape from custody."

At approximately 4:30 p.m. on March 14, 2003, Hart was released from the Cross County Jail because Cross County officials confirmed Hart's assertion that the Georgia trial court's order (albeit under appeal) had ordered Hart released following his federal incarceration. Hart traveled back to Georgia on his own.

E.      Hart's Incarceration in the Georgia Prison

On or about March 14, 2003, Defendant Hodges discussed Hart's incarceration with a reporter from the Albany Herald. In an article printed on March 15, 2003, Hodges is quoted as saying Hart could be charged with escape if he failed to report to the Georgia prison on Monday, March 17, 2003. Hodges is also quoted in the article as taking the position that his appeal of the Georgia trial court's sentencing order had the effect of nullifying the order and reinstating the detainer against Hart.

Hart surrendered at the Georgia prison at 8:00 a.m. on Monday, March 17, 2003.

F.      Expedited Appeal to the Georgia Court of Appeals

7

On the morning of March 17, 2003, Hart filed an Extraordinary Motion for Expedited Appeal with the Georgia Court of Appeals seeking to secure his release. Defendant Hodges responded the same day, asserting that his previous notice of appeal of the state trial court's sentencing order acted as a supersedeas and suspended the effect of the second state sentence. Hodges also asserted the second state sentence was void.

Before 5:00 p.m. on March 17, 2003, the Georgia Court of Appeals ruled that Hart must be released "instanter" from the Georgia prison. Its order stated:

> [T]he District Attorney is not free to disregard the orders of the Dougherty Superior Court or to seek detainer against Hart . . . .
> The District Attorney contends that, by filing a notice of appeal, the trial court's original order clarifying Hart's sentence was immediately rendered null and void. This contention is patently erroneous . . . .
> The District Attorney simply has no authority to subjugate an order of the Superior Court to his own will, thereby circumventing the orderly imposition of justice.
> . . . .
> Given the fact that Hart has completely served his time under the existing order of the trial court, the State has no lawful authority to incarcerate him at this time.

Hart alleges the Chief Clerk of the Georgia Court of Appeals faxed a copy of its order to the Georgia prison at approximately 5:00 p.m. on March 17, 2003 and also telephoned the Georgia prison and explained to an unknown employee that "instanter" in the order meant instantly.

8

Hart was released from the Georgia prison at approximately 12:25 p.m. on March 18, 2003, after approximately 28.5 hours of incarceration.

On August 28, 2003, the Georgia Court of Appeals issued a full decision on the merits of Defendant Hodges's appeal. State v. Hart, 263 Ga. App. 8, 587 S.E.2d 164 (Ga. Ct. App. 2003). The Court of Appeals determined the state trial court's second state sentence – stating that Hart would serve no additional time in a state prison after his federal release – was void because it was for an indeterminate period of time, in violation of Georgia law. Id. at 9, 587 S.E.2d at 166. The Court of Appeals vacated that second state sentence and remanded for re-sentencing. Id. Because the Georgia DOC's detainer was based on a void sentence, the Georgia Court of Appeals affirmed the portion of the state trial court's sentencing order removing the detainer. Id. On October 9, 2003, the state sentencing court held another sentencing hearing and sentenced Hart to time served.

## G.    District Court Proceedings

Plaintiff Hart filed this action on March 11, 2005. In his Second Amended Complaint, Hart alleges claims against Defendants Hodges, Amideo, and Head, in their individual capacities, for violations of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and for

battery and conspiracy under Georgia law.[3]

Defendants Hodges, Amideo, and Head moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[4] The Defendants argued that they were immune from suit because of absolute prosecutorial immunity and, in the event absolute immunity did not apply, that they were entitled to qualified immunity.

On March 30, 2009, the district court granted the Defendants' motion for judgment on the pleadings on the basis that Defendants Hodges, Amideo, and Head were immune from suit through the doctrine of absolute immunity. The federal claims having been dismissed, the district court also dismissed Hart's pendent state law claims without prejudice for lack of jurisdiction. The district court did not address whether the Defendants were entitled to qualified immunity.

Hart filed this timely appeal.

## II. DISCUSSION

---

[3]Hart originally also sued Georgia DOC Commissioner W. James Wetherington and a John Doe defendant. During the district court proceedings, Hart voluntarily dismissed (1) a civil RICO claim; (2) his official capacity claims against all Defendants; and (3) his claims against Defendants Wetherington and Doe. Hart originally also asserted claims under 42 U.S.C. § 1985 but abandoned these on appeal.

[4]"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). The party claiming immunity from suit bears the burden of proof. Weissman v. NASD, 500 F.3d 1293, 1295-96 (11th Cir. 2007).

## A.  The Doctrine of Absolute Prosecutorial Immunity

In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984 (1976), the Supreme Court considered whether traditional common-law immunities for prosecutors, which derived from immunities recognized for judges, applied to civil cases brought under 42 U.S.C. § 1983.  The Supreme Court concluded that they did.  Id. at 427-28, 96 S. Ct. at 993-94 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, J.) ("In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.")).  The Supreme Court has explained that the common law gives absolute immunity in § 1983 actions for activities that are "'intimately associated with the judicial phase of the criminal process.'"  Van de Kamp v. Goldstein, 129 S. Ct. 855, 860 (2009) (quoting Imbler, 424 U.S. at 430, 930 S. Ct. at 995); accord Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).[5]

"[A] functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions,

---

[5]Courts often refer to "prosecutorial" immunity and "absolute" immunity synonymously when discussing acts by prosecutors.  To be clear, prosecutorial immunity and "quasi-judicial immunity," which is often used to refer to acts by executive officials other than prosecutors, are both forms of absolute immunity.  For the purposes of this opinion, absolute, prosecutorial, and quasi-judicial immunities are used interchangeably.

11

or whether they should enjoy instead only the qualified immunity normally afforded public officials." Jones, 174 F.3d at 1282. This functional approach looks to the nature of the function performed, not to the identity of the person who performed it. Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993). Under this functional analysis, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process. Van de Kamp, 129 S. Ct. at 861.

Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies. Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. Imbler, 424 U.S. at 431, 96 S. Ct. at 995. A prosecutor is immune for malicious prosecution. Malley v. Briggs, 475 U.S. 335, 342-43, 106 S. Ct. 1092, 1097 (1986).[6] Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing. Burns v. Reed, 500 U.S. 478, 490-92, 111 S. Ct. 1934, 1942 (1991); Kalina v. Fletcher, 522 U.S. 118, 126, 118 S. Ct. 502, 507-08 (1997);

_____

[6]A federal prosecutor defending a Bivens action is also immune. Butz v. Economou, 438 U.S. 478, 504, 98 S. Ct. 2894, 2909-10 (1978); Allen v. Thompson, 815 F.2d 1433, 1434 (11th Cir. 1987).

12

see also Van de Kamp, 129 S. Ct. at 861. Prosecutors are also immune from damages claims alleging failure to institute a system of information-sharing among deputy district attorneys regarding confidential jailhouse informants. Van de Kamp, 129 S. Ct. at 863-64 ("The management tasks at issue, insofar as they are relevant, concern how and when to make impeachment information available at trial. They are thereby directly connected with the prosecutor's basic trial advocacy duties.").

Applying these principles, our circuit has emphasized that, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." Jones, 174 F.3d at 1281. Such absolute immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Id. (quotation marks omitted); accord Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002). "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." Jones, 174 F.3d at 1281-82; accord Rowe, 279 F.3d at 1279-80 (prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity, but a prosecutor who participated in the search of a suspect's

13

apartment is entitled to only qualified immunity). Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate . . . complaints about the prison system, [and] threatening . . . further criminal prosecutions. . . ." Henzel v. Gerstein, 608 F.2d 654, 657 (5th Cir. 1979);[7] accord Marx v. Gumbinner, 855 F.2d 783, 789 n.10, 790 (11th Cir. 1988) (concluding that prosecutors have absolute immunity for rendering legal advice to police officers concerning the existence of probable cause to arrest).

This immunity may extend to certain post-sentencing conduct of a prosecutor. Bruce v. Wade, 537 F.2d 850, 852 (5th Cir. 1976) (concluding that prosecutor had absolute immunity for presentation of evidence at post-sentencing federal habeas corpus proceedings); Allen, 815 F.2d at 1434 (concluding that prosecutor had absolute immunity for giving information about a defendant to the Parole Commission in regard to whether to grant parole to the defendant serving a federal sentence). In Allen v. Thompson, this Court reasoned that, "[p]arole decisions are the continuation of the sentencing process, and the assistant United States Attorney's reports to the Parole Commission are part of that process." 815

[7]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

F.2d at 1434.  We added: "[w]hile not undertaken literally at the direction of the court, these activities are so intimately associated with the judicial phase of the criminal process as to cloak the prosecutors with absolute immunity from suits for damages."  Id.

Prosecutorial immunity is not limited solely to prosecutors.  Probation officers are entitled to absolute immunity for the preparation and submission of a presentence report in a criminal case because the "report is an integral part of the sentencing process, and in preparing the report the probation officer acts at the direction of the court."  Hughes v. Chesser, 731 F.2d 1489, 1490 (11th Cir. 1984) (state probation officer) (quoting Spaulding v. Nielsen, 599 F.2d 728, 729 (5th Cir. 1979) (federal probation officer)).  "[T]his narrow function is intimately associated with the judicial phase of the criminal process[.]"  Hughes, 731 F.2d at 1490 (internal quotation marks omitted).  Police officers receive absolute immunity for their testimony as witnesses at trial and in grand jury proceedings.  Jones, 174 F.3d at 1281.  Individual Parole Board members "are entitled to absolute quasi-judicial immunity from a suit for damages."  Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005).  Parole officers also have absolute quasi-judicial immunity "for testimony given during parole revocation hearings when they act within the scope of their duties."  Id.

15

On the other hand, prosecutorial immunity does not apply when the prosecutor acts outside the ambit of activities "intimately associated" with the judicial process. Generally, the Supreme Court has made clear that prosecutorial immunity may not apply when a prosecutor is not acting as an officer of the court but is instead engaged in certain investigative or administrative tasks. Van de Kamp, 129 S. Ct. at 861. These activities include conducting investigative work before an arrest, Buckley, 509 U.S. at 275-76, 113 S. Ct. at 2617, making statements to the press, id. at 277, 113 S. Ct. at 2617-18, and providing legal advice to police regarding pre-indictment investigation techniques. Burns, 500 U.S. at 496, 111 S. Ct. at 1944-45. Prosecutorial immunity does not apply when a prosecutor knowingly makes false statements of fact in an affidavit supporting an application for an arrest warrant. Kalina, 522 U.S. at 123, 118 S. Ct. at 506. "Likewise, police officers do not have absolute immunity for submitting supporting affidavits in their applications for arrest warrants." Jones, 174 F.3d at 1282.

**1.    Defendant Hodges**

Plaintiff Hart argues Defendant Hodges is not immune from suit for the following acts:

(1)    conspiring to cause the issuance of the second state warrant;
(2)    calling upon law enforcement officers in Arkansas to detain Hart upon

16

his release from the federal prison;

(3)    conspiring with Amideo to issue a notice to surrender to Hart and threatening further prosecution; and

(4)    issuing statements to the Albany Herald.[8]

The district court reasoned that because Hodges was "attempt[ing] to achieve completion of the sentence he thought was ordered by the federal and state court judges[,]" he was entitled to absolute immunity. D. Ct. Order at 12 (Mar. 30, 2009) (citing Henzel, 608 F.2d 657).

As an initial matter, it is clear that Hodges is not absolutely immune for his alleged statements to the press. The Supreme Court's decision in Buckley v. Fitzsimmons categorically forecloses absolute prosecutorial immunity for statements to the media. 509 U.S. at 278, 113 S. Ct. at 2618. The district court thus erred in granting absolute prosecutorial immunity to Defendant Hodges for his statements to the Albany Herald.

---

[8] We recognize that Hart also claims the district court erred in granting Hodges and Amideo absolute immunity for their advice to Warden Head to disregard the order of the Georgia Court of Appeals. However, Hart's Second Amended Complaint does not allege facts sufficient to state such a claim against Hodges and Amideo. The Second Amended Complaint does allege: "Discovery may show that Defendants, D.A. Hodges . . . [and/or] General Counsel Amideo . . . acted in conspiracy with Defendant Warden Head to cause Plaintiff not to be released in a timely manner." Second Am. Compl. ¶ 137. The Second Amended Complaint does not otherwise allege Defendants Hodges or Amideo participated in any way in Warden Head's disregard of the Georgia Court of Appeals's order faxed to the Warden. See id. ¶¶ 87-89. These vague allegations of conspiracy to disregard the order of the Court of Appeals are not sufficient to state such a claim. See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). Thus, Hart has not shown reversible error in this regard, and we need not address whether Hodges or Amideo would be absolutely immune for such conduct.

Our consideration of the remaining conduct concerns whether that conduct was "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430, 96 S. Ct. at 995. After review, we agree with the district court that Hodges is entitled to absolute immunity for his alleged actions in (1) causing the Georgia DOC to issue the second state warrant instructing federal and Arkansas officials to retake Hart for his return to the Georgia prison to serve his already-imposed state sentence, (2) arranging to have Hart detained at the federal prison after his release in order to return to Georgia, and (3) conspiring to threaten Hart with further prosecution if he did not return to Georgia.[9] Our previous decisions held prosecutors were absolutely immune for filing a baseless detainer and threatening further criminal prosecution, Henzel, 608 F.2d at 657, and for forwarding information about a defendant to the Parole Commission as a "continuation of the sentencing process." Allen, 815 F.2d at 1434; see also Lucien v. Preiner, 967 F.2d 1166, 1167 (7th Cir. 1992) (state prosecutor entitled to absolute immunity for sending letter during inmate's executive clemency proceedings because, "[a] determination of executive clemency, like a parole decision, is an extension of the sentencing process"). We see no material

_____

[9]Plaintiff Hart does not argue that Defendant Hodges violated his rights by appealing the state trial court's second sentencing order or through his appearances before the state trial court or the Georgia Court of Appeals. We consistently have held that prosecutorial immunity applies for actions taken as an integral part of a criminal appeal. Henzel, 608 F.2d at 657.

18

distinction between those earlier cases granting immunity for certain post-sentencing conduct and this case. All of Hodges's actions were directly related to and intimately associated with the state trial court's sentence and his role as an advocate regarding the court's sentence. Hodges was working to advocate the judicial sentence he understood (whether correctly or mistakenly) had been imposed by the state trial court. "While not undertaken literally at the direction of the court, [Hodges's] activities [we]re so intimately associated with the judicial phase of the criminal process as to cloak [him] with absolute immunity from suits for damages." Allen, 815 F.2d at 1434.

Hart's argument on appeal relies heavily on his assertion that a prosecutor should be categorically denied absolute immunity if he disobeys a judge's order (e.g., the second state sentence that Hodges appealed) outside the presence of the judge. This argument, however, misapprehends the functional analysis used in considering absolute immunity. As we repeatedly have stated, the determination of absolute prosecutorial immunity depends on the nature of the function performed, not whether the prosecutor performed that function incorrectly or even with dishonesty, such as presenting perjured testimony in court. Jones, 174 F.3d at 1289.

Hart's argument that conduct violating a judge's order, or more broadly,

violating a legal obligation, should not be entitled to absolute immunity is not consistent with the fundamental purpose of absolute immunity. Absolute immunity renders certain public officials completely immune from liability, even when their conduct is wrongful or malicious prosecution. Having absolute immunity in civil damages actions would be of little consequence if it could only be asserted when the defendant prosecutor correctly complied with all his legal obligations, in which case there would be no claim.[10] Marx, 855 F.2d at 791 (plaintiff's argument that unlawful conduct bars assertion of absolute prosecutorial immunity was "clearly without merit"); Webster v. Gerstein, 913 F.2d 510, 513-14 (8th Cir. 1990) (affirming immunity for prosecutor's disregard of a judicial order to file an information or release the defendant).

Rather, the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed in order to prevent a flood of claims against the remainder of prosecutors performing their duties properly. Imbler, 424 U.S. at 426, 96 S. Ct. at 994.[11] Indeed, as it turns out here,

---

[10]The Supreme Court also has noted that "there are other checks on prosecutorial misconduct [instead of individual civil liability for damages], including the criminal law and professional discipline." Burns, 500 U.S. at 486, 111 S. Ct. at 1939.

[11]Hart cites several cases he contends denied absolute immunity because of prosecutors' disobedience of judicial orders. These cases do not stand for the proposition cited and otherwise are not persuasive. For example, in Odd v. Malone, 538 F.3d 202, 213-14 (3d Cir. 2008), although the defendant prosecutor violated a judicial order to keep the judge informed of any delays in a related criminal case, it was the conclusion that his conduct "was primarily

20

the second state sentencing order, that Hodges allegedly violated through his actions, was later determined to be void under Georgia law, and Hart was remanded for re-sentencing by the state sentencing court. State v. Hart, 263 Ga. App. at 9, 587 S.E.2d at 166. Given the gap between the 27-month state sentence originally imposed and the 24 months Hart actually served in federal prison, the state sentencing court imposed yet a third sentence, of time served, that definitively concluded the imprisonment portion of Hart's state sentence.

For all of these reasons, we affirm the district court's order granting immunity to Defendant Hodges, except as to his statements to the press.

### 2. Defendants Amideo and Head

Hart next argues that the district court erred in granting immunity to Defendant Amideo, the general counsel of the Georgia DOC, and Warden Head, who was in charge of the Georgia prison. Hart argues Defendant Amideo cannot be absolutely immune for (1) causing the issuance of the second state warrant, and (2) issuing the notice to surrender to Hart and threatening further prosecution. Hart

---

administrative" that drove the Third Circuit's refusal to extend prosecutorial immunity. In Gagan v. Norton, 35 F.3d 1473, 1476 (10th Cir. 1994), the Tenth Circuit denied absolute immunity to a prosecutor who "allegedly countermand[ed] a state court judge's order directing a court reporter to prepare transcripts for use by an indigent pro se litigant in a civil action." The Tenth Circuit denied absolute immunity because "a prosecutor's actions in contravening the authority of the judicial branch of state government in regard to the defense of a civil action" were "simply too far removed on the continuum from the core prosecutorial functions of initiating and pursuing criminal prosecutions to be covered by absolute immunity." Id. (emphasis supplied).

21

argues Warden Head is not absolutely immune for ignoring the order of the Georgia Court of Appeals and not releasing Hart for approximately 19.5 hours after receiving notice of the order.

Absolute immunity generally has not been extended to corrections officials. Procunier v. Navarette, 434 U.S. 555, 561-62, 98 S. Ct. 855, 859-60 (1978); Whitethorn v. Harrelson, 758 F.2d 1416, 1426 (11th Cir. 1985); Bruce, 537 F.2d at 852-53. In Procunier v. Navarette, the Supreme Court declined to extend absolute immunity in a § 1983 action to the director of a state corrections department, a prison warden and assistant warden, and three subordinate prison employees, holding instead that corrections officials are entitled to civil damage immunity, if at all, through qualified immunity. 434 U.S. at 561-62, 98 S. Ct. at 859-60. We applied Procunier in Whitethorn v. Harrelson, when we stated the defendants – employees of the Alabama Department of Corrections – were not entitled to absolute immunity for denying the plaintiff the opportunity to participate in a work release program. 758 F.2d at 1426; see also Bruce, 537 F.2d at 852-53 (not applying absolute immunity to custodial officials accused of abusing plaintiff while he was incarcerated).

Defendants Amideo's and Head's actions related to the same subject matter as some of Hodges's conduct – that is, the issuance of the second state warrant, the

22

issuance of the notice to surrender, and disobeying the order of the Georgia Court of Appeals. However, Defendants Amideo's and Head's roles in those matters are materially different from Hodges's role. As a prosecutor, Hodges was directly participating as an advocate for how Hart's sentence should be interpreted. In contrast, Amideo's and Head's roles involved the Georgia DOC's executive function of taking custody of a prisoner. Unlike Hodges, Amideo and Head did not participate in the judicial process, much less have an advocate role in that process. Rather, Defendant Amideo's role as legal advisor to the Georgia DOC, which manages the Georgia prison system, and Warden Head's role as chief jailer of the Georgia prison where Hart was incarcerated, are not roles intimately associated with the judicial phase of the criminal process.

We therefore agree with Hart that the district court erred in granting absolute immunity to Defendants Amideo and Head for actions taken in their roles as state corrections officials and vacate the district court's order as to Amideo and Head.

### B. Qualified Immunity

In the district court, the Defendants argued that, even if denied absolute immunity, they still are entitled to qualified immunity. E.g., Buckley, 509 U.S. at 278, 113 S. Ct. at 2618; Burns, 500 U.S. at 494-95, 111 S. Ct. 1944 (qualified immunity may be available when officials do not qualify for absolute immunity);

23

Procunier, 434 U.S. at 561 n.7, 98 S. Ct. at 859 n.7. The district court did not, however, address the Defendants' qualified immunity arguments. As this issue was raised but not decided in the district court, we think it best to allow the district court to address it in the first instance on remand. See Strength v. Hubert, 854 F.2d 421, 426 (11th Cir. 1988) (remanding issue of qualified immunity to the district court for determination).[12]

Finally, the district court dismissed Plaintiff Hart's state law claims of battery and conspiracy to commit battery for lack of subject matter jurisdiction because all the federal claims were dismissed. See 28 U.S.C. § 1367(c)(3). Having reinstated portions of Hart's federal claims, dismissal of his state law claims for lack of jurisdiction is no longer appropriate. The district court's order dismissing Hart's state law claims is vacated, and the state law claims are reinstated on remand.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[12]The Defendants also argue Plaintiff Hart abandoned any arguments against qualified immunity because he failed to raise the issue in his initial appeal brief, citing our familiar rule that arguments not raised by an appellant are deemed abandoned. United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004). Because the district court did not rule on qualified immunity grounds, however, Hart could not complain of error in the district court's qualified immunity analysis and effectively could not have raised qualified immunity on appeal. In these particular circumstances, Hart did not waive his objections to qualified immunity. And we necessarily take no position on whether the Defendants' alleged actions violated Hart's constitutional rights or whether the rights at issue were clearly established at the time of violation. See Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009).