[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13940
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cv-60306-MGC

LAURA M. WATSON,

Plaintiff-Appellant,

versus

FLORIDA JUDICIAL QUALIFICATIONS COMMISSION,
RUBEN V. CHAVEZ,
Co-Special Counsel to the Florida Judicial Qualifications
Commission, in individual and official capacities,
MAYANNE DOWNS,
Member of the Hearing Panel of the Florida Judicial Qualifications
Commission, in individual and official capacities,
KERRY I. EVANDER,
Chair of the Hearing Panel of the Florida Judicial Qualifications
Commission, in individual and official capacities,
THOMAS B. FREEMAN,
Member of the Investigative Panel of the Florida Judicial Qualifications
Commission, in individual and official capacities, in individual and official
capacities, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 15, 2018)

Before MARCUS, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Laura M. Watson, a former Florida circuit court judge proceeding *pro se*, appeals the district court's dismissal based on absolute and qualified immunity of her *pro se* second amended complaint raising civil rights claims under 42 U.S.C. § 1983 and a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim arising out of the Florida Judicial Qualification Commission's ("JQC") recommendation to the Florida Supreme Court that she be removed from the bench and her subsequent disbarment by The Florida Bar.  She raised claims against 19 officials from the JQC and The Florida Bar (collectively, "the JQC and Bar Officials") in their individual capacities.  On appeal, Watson argues that the JQC and Bar Officials: (1) waived any absolute immunity defense by failing to raise it in an earlier appeal; (2) are not entitled to absolute immunity anyway because they would not have had immunity when the Civil Rights Act was passed in 1871; and (3) are not entitled to qualified immunity because they violated clearly established

2

statutory and constitutional rights of which a reasonable person would have known.

## I.

Whether an official is entitled to absolute immunity is a question of law that we review *de novo*. *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017). For the purpose of determining whether the defendants are entitled to absolute immunity, we accept as true the allegations of the complaint, along with any reasonable inference that may be drawn from them. *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir. 1999). We also review the dismissal of a complaint based on qualified immunity *de novo*. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

Although the text of 42 U.S.C. § 1983 does not explicitly provide immunity, the Supreme Court has reasoned that at the time Congress enacted § 1983, Congress meant to incorporate the common law immunities then available, or would have explicitly provided otherwise. *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). Thus, determination of absolute immunity is not a policy determination, but involves an historical exercise. *Id.* The Supreme Court has interpreted § 1983 to give absolute immunity to functions intimately associated with the judicial phase of the criminal process. *Malley v. Briggs*, 475 U.S. 335, 342 (1986).

Judges are entitled to absolute immunity from liability for damages for acts committed within their judicial jurisdiction. *Stevens*, 877 F.3d at 1301. Absolute immunity applies to claims made in an individual capacity. *See id.* at 1300-01, 1304-08 (stating that the plaintiff's claims are against the judge in his individual capacity and applying absolute immunity). A judge must decide all cases before him, including cases that are controversial and may arouse intense feelings in the litigants. *Id.* at 1301. Although a judge's error may be corrected on appeal, he should not have to fear that unsatisfied litigants may pursue litigation charging malice or corruption, which would not promote principled or fearless decision-making. *Id.*

Absolute immunity is not reserved only for Article III judges and is not based on rank or title, but rather flows from the "nature of the responsibilities of the individual official." *Id.* at 1301-02 (quotation marks omitted). Courts instead use a functional approach to determine whether an official is entitled to absolute immunity. *Id.* at 1302. Factors to consider in deciding whether to apply absolute immunity to a particular person include: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the

4

correctability of error on appeal. *Id.* Under this functional approach, absolute immunity has been extended to state court judges, administrative law judges and federal hearing examiners, federal and state prosecutors, grand jurors, and witnesses testifying in judicial proceedings. *Id.*

In *Stevens*, we extended absolute immunity to immigration judges, noting that immigration judges were tasked with resolving cases that were just as fractious as those in court. *Id.* Moreover, we noted that immigration proceedings were adversarial in nature and often involved controversial issues of extreme significance to those involved, which underscored the importance of preserving an immigration judge's independence. *Id.* We further concluded that an immigration judge's role in immigration proceedings was functionally comparable to that of a judge because an immigration judge had many of the same powers. *Id.* We noted that immigration judges, like Article III judges, were required to exercise independent judgment, resolve issues in an impartial manner, and were bound by agency and federal court precedent. *Id.* at 1302-03. Similarly, we noted that, as in Article III courts, parties to an immigration hearing may be represented by counsel, may present documentary evidence and witness testimony, and are entitled to written notice of the immigration judge's decision, which is required to provide reasons for the decision. *Id.* at 1303. We also noted that parties could seek review of the immigration judge's decision. *Id.*

5

Prosecutors are also absolutely immune from liability for damages for activities that are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Courts again use a functional approach to determine whether an individual is entitled to prosecutorial immunity, which "looks to the nature of the function performed, not to the identity of the person who performed it." *Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009). Absolute immunity can cover even wrongful or malicious acts by prosecutors. *Id.* at 1298. The immunity applies where, in the course of their role as an advocate for the state, a prosecutor prepares for the initiation of judicial proceedings or for trial. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The immunity also applies where the prosecutor uses false testimony and suppresses exculpatory evidence at trial. *Fullman v. Graddick,*, 739 F.2d 553, 558-59 (11th Cir. 1984). Even where the plaintiff claimed that the prosecutor: (1) conspired to cause the issuance of a second state warrant; (2) called upon law enforcement officers to detain the plaintiff upon his release from federal prison; and (3) conspired to threaten further prosecution, we concluded that absolute immunity applied because all of the prosecutor's actions were "directly related to and intimately associated with the state trial court's sentence and his role as an advocate regarding the court's sentence." *Hart*, 587 F.3d at 1296-98.

6

Employees of The Florida Bar are entitled to absolute immunity when they act as agents of the Florida Supreme Court. *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).

The Florida Constitution vests the JQC with jurisdiction to investigate and recommend to the Florida Supreme Court the removal from office or discipline of any judge whose conduct, during their term of office or otherwise, demonstrates a present unfitness to hold office or warrants discipline. Fla. Const. Art. V, § 12(a)(1). The JQC has jurisdiction over judges regarding allegations that misconduct occurred before or during service as a judge if a complaint is made no later than one year following service as a justice or judge. *Id.* The JQC must adopt rules regulating its proceedings. *Id.*, § 12(a)(4). The JQC has the power to issue subpoenas. *Id.* Until the investigative panel files formal charges against a judge in the Florida Supreme Court, proceedings before the JQC are confidential. *Id.* Upon a finding of probable cause and the filing of formal charges, all further proceedings are public. *Id.* The JQC is divided into the investigative panel and the hearing panel. *Id.*, § 12(b) The investigative panel has jurisdiction to receive or initiate complaints, conduct investigations, dismiss complaints, and submit formal charges to the hearing panel. *Id.* The hearing panel has the authority to receive and hear formal charges from the investigative panel and recommend to the Florida Supreme Court the removal or discipline of a judge. *Id.* The Florida Supreme

7

Court receives recommendations from the hearing panel and may accept, reject, or modify the findings, conclusions, and recommendations. *Id.*, § 12(c)(1).

Under the Florida Judicial Qualifications Commission Rules, a judge has the right and reasonable opportunity to defend herself against the charges by the introduction of evidence, to be represented by an attorney, and to examine and cross-examine witnesses. Fla. Judicial Qualifications Comm'n Rule 15(a). The judge also has the right to issue subpoenas for the attendance of witnesses to testify or produce other evidence. *Id.* If the hearing panel decides to recommend discipline or the removal of a judge, it must file a copy of the recommendation, together with a transcript and the findings and conclusions, with the Florida Supreme Court and mail notice of the filing, along with a copy of the recommendations, findings, and conclusions, to the judge. Fla. Judicial Qualifications Comm'n Rule 20. If the judge is concerned about the impartiality of a member of the hearing panel, she may submit an affidavit including the facts stated as the basis for her concern. Fla. Judicial Qualifications Comm'n Rule 25(a). If the affidavit is supported in substance by affidavit of at least two reputable citizens of Florida who are not related to the judge or her attorney, the member or members accused of bias are disqualified from hearing the charges. *Id.*

The Florida Bar is an official arm of the Florida Supreme Court. *See* Rules Regulating The Florida Bar Introduction. Under the Rules Regulating The Florida

8

Bar, although the complaining witness is not a party to the disciplinary hearing, Bar officials must communicate case developments to the complaining party. Rules Regulating The Florida Bar 3-7.4(f), 3-7.4(i), 3-7.4(j)(2), 3-7.4(k), 3-7.5(d).

Here, as an initial matter, the JQC and Bar Officials did not waive an absolute immunity defense during the first appeal because the district court dismissed Watson's first complaint without requiring a response. We hold that the hearings before the JQC are functionally similar to those before immigration judges, administrative law judges, and federal hearing examiners, all of which have been extended absolute judicial immunity. It is vital that the members of the JQC hearing panel be free from harassment or intimidation as they investigate sitting judges; safeguards exist to ensure that no member of the hearing panel is biased or prejudiced against the accused, the accused has the right to present evidence and issue subpoenas, and the Florida Supreme Court can choose to accept, reject, or modify the recommendations of the hearing panel. Similarly, we hold that the members of the JQC investigative panel are functionally similar to prosecutors when they present their case to the hearing panel.

The district court did not err when it dismissed Watson's claims against the JQC and Bar Officials because: (1) the members of the JQC investigative panel were entitled to absolute prosecutorial immunity based on the functions of their position; (2) the members of the JQC hearing panel were entitled to absolute

9

judicial immunity based on the functions of their position; and (3) the Bar

Officials were entitled to absolute immunity as agents of the Florida Supreme

Court acting in disciplinary proceedings. *See Carroll v. Gross*, 984 F.2d 392, 393

(11th Cir. 1993).

The judgment of the district court is

**AFFIRMED.**