[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12993

Non-Argument Calendar

_____

MICHAEL CHARLES WARD,

Plaintiff-Appellant,

*versus*

JAMES V. CHAFIN,
Individually,
JON FORWOOD,
Individually,
KENNETH W. MAULDIN,
Individually,

Defendants-Appellees,

JOHN DOES,

2                     Opinion of the Court                    22-12993

Defendants.

———————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:21-cv-00111-CAR

———————————

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

After his conviction for aggravated stalking was reversed for violating the Double Jeopardy Clause, Michael Charles Ward sued the prosecutors involved in his state-court prosecution—James Chafin, Jon Forwood, and Kenneth Mauldin—alleging malicious prosecution and a conspiracy to delay the appeal under 42 U.S.C. § 1983. The district court dismissed the case, concluding that the defendant prosecutors were entitled to both absolute prosecutorial immunity and qualified immunity. On appeal, Ward maintains that absolute immunity does not apply and that the defendants violated his clearly established rights against unreasonable seizures and double jeopardy. After careful review, we reject these arguments and affirm.

## I.  Factual Background

Ward was arrested in November 2007 for making unsolicited and alarming contacts with an ex-girlfriend who sought to end

their relationship and cut off further contact. *Ward v. State*, 831 S.E.2d 199, 201–02 (Ga. Ct. App. 2019). He was released on a "no-contact" bond and later charged in state court with various crimes, including misdemeanor stalking. *Id.* at 202. Then, in December 2008, after the first indictment, Ward ordered a book called "Redeeming Love" and had it delivered to the victim's home. As a result, he was arrested for violating his no-contact bond and indicted on the felony offense of aggravated stalking. *Id.*

In August 2009, Ward was tried on the first indictment for misdemeanor stalking and other crimes. "Despite the evidence of Ward's unsolicited and alarming contacts with the victim, a jury acquitted him of all charges except for possession of tools in the commission of a crime." *Id.*

After Ward's acquittal, the state moved to "dead docket"[1] the pending aggravated stalking charge, but Ward objected and the trial court denied the state's request. *Id.* Then, in January 2010, five months after his acquittal on the stalking and other charges, a jury convicted Ward of aggravated stalking, and he was sentenced to the maximum of ten years with credit for time served. *Id.*

---

[1] When a case is dead docketed, "prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court. Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor." *Howard v. Warden*, 776 F.3d 772, 774–75 (11th Cir. 2015) (citation and quotation marks omitted).

Ward timely moved for a new trial in February 2010. Following "several amendments and a lengthy delay," the trial court eventually held a hearing in September 2017 and denied the motion in December 2017. *Id.*

Ward appealed to the Georgia Court of Appeals, which reversed his conviction in a 2-1 decision. *See id.* at 207. The majority held that Ward's aggravated stalking conviction was barred by the Double Jeopardy clause, given his acquittal on misdemeanor stalking in the first trial. *Id.* at 205–06. While the majority observed that sufficient untainted evidence supported the conviction, it concluded that the state ran afoul of the Double Jeopardy clause by relying on "the same evidence from Trial 1" and "relitigating the stalking charge that was necessarily decided adversely by the jury's acquittal" in the first trial. *Id.* at 206–07.

The dissent would have found no violation of double-jeopardy principles. In the dissent's view, the second trial, while linking back to the series of events from the first case, focused on "his actions subsequent to being released on a no-contact bond order on November 6, 2007." *Id.* at 207–08 (Goss, J., dissenting). Because the second trial was based on "separate acts occurring on different dates with additional evidence and witnesses" that were not part of the first trial, the dissent would have held that the prior acquittal did not bar Ward's conviction for aggravated stalking. *Id.*

By the time Ward's conviction was overturned in July 2019, he had already served his sentence and been released. *Id.* at 202. The majority decision called out the "extraordinary post-

conviction, pre-appeal delay"—well over seven years—pending a hearing on Ward's motion for new trial. *Id.* at 202–03 (quotation marks omitted). And it stated that "all those involved in the criminal justice system," including trial courts, prosecutors, defense counsel, and defendants, had a duty to ensure that post-conviction motions are decided "without unnecessary delay," a duty that "unfortunately was not fulfilled in this case." *Id.* at 203.

## II. Procedural History

In October 2021, Ward filed suit under § 1983 against Chafin, Forwood, and Mauldin, the prosecutors involved in obtaining the now-vacated conviction. In Ward's view, the defendants knew or should have known that the prosecution for aggravated stalking lacked probable cause and, following his acquittal, that it also violated the Double Jeopardy clause. He also alleged in conclusory terms that the defendants "worked in concert" with each other and unidentified court personnel to delay a ruling on his motion for new trial. Ward also brought state law claims that are not at issue in this appeal.

The district court granted the defendants' motion to dismiss. In relevant part, the court concluded that the defendants were entitled to absolute prosecutorial immunity on Ward's § 1983 claims because their liability was based on conduct closely associated with the judicial process. Alternatively, the court stated that, even if absolute immunity did not apply, the defendants were still entitled to qualified immunity because Ward failed to sufficiently allege a

clear violation of his Fourth Amendment or double-jeopardy rights. Ward now appeals.

## III. Discussion

We review *de novo* the grant of a motion to dismiss, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Rehberg v. Paulk*, 611 F.3d 828, 837 n.5 (11th Cir. 2010); *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). While we assume the plaintiff's factual allegations are true, we "may disregard labels and conclusions couched as factual allegations." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (cleaned up). The complaint must plead enough facts to permit drawing "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

After careful review, we conclude that Ward's § 1983 claims against the defendant prosecutors for their pre-conviction conduct are barred by both absolute and qualified immunity. And the allegations of post-conviction conduct are insufficient to state a plausible § 1983 conspiracy claim.

### A. Absolute Immunity

Prosecutors enjoy absolute immunity from suit under § 1983 for exercising prosecutorial functions as an advocate for the state. *See Rehberg*, 611 F.3d at 837–38. This immunity extends to "all activities that are intimately associated with the judicial phase of the criminal process," including the initiation or continuation of a

prosecution, appearances before grand juries or in other judicial proceedings, and the presentation of evidence. *Id.* (quotation marks omitted). It also covers preparation for those activities, including the evaluation of evidence and information. *Id.* at 838; *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The purpose of the doctrine is to remove "impediments to the fair, efficient functioning of a prosecutorial office," even at the cost of "depriv[ing] a plaintiff of compensation that he undoubtedly merits." *Van de Kamp v. Goldstein*, 555 U.S. 335, 348 (2009).

"If a prosecutor functions in a capacity unrelated to his role as an advocate for the state, [though,] he is not protected by absolute immunity but enjoys only qualified immunity." *Rehberg*, 611 F.3d at 838. For instance, "[a] prosecutor is not entitled to absolute immunity when he performs the investigative functions normally performed by a detective or police officer." *Id.* (quotation marks omitted). He also may lose absolute immunity when he "gives advice to police during a criminal investigation," "makes statements to the press," or "acts as a complaining witness." *Van de Kamp*, 555 U.S. at 343–44.

Here, the district court correctly found that Ward's § 1983 claims against the defendant prosecutors, based on their conduct leading to the aggravated stalking conviction, were barred by absolute immunity. Ward does not plausibly allege any wrongful conduct by the defendants unrelated to their roles as advocates for the state, so immunity applies. *See Iqbal*, 556 U.S. at 678–79; *Rehberg*, 611 F.3d at 837–38.

According to the operative amended complaint, the defendant prosecutors "reviewed and investigated" Ward's violation of the no-contact order, decided to charge him with aggravated stalking without probable cause, caused a warrant to issue for his arrest, and presented evidence before a grand jury and obtained an indictment. Then, after Ward's acquittal on stalking, they refused to dismiss the aggravated stalking charge they allegedly knew was barred by double jeopardy and instead obtained a conviction based on the same evidence presented at the first trial.

All this conduct is intimately associated with the judicial phase of the criminal process. *See Rehberg*, 611 F.3d at 837–38. Although the amended complaint labels some of it as "administrative," "ministerial," "investigative," or "beyond the traditional role of the prosecutor," we may disregard labels and conclusions couched as factual allegations. *Doe*, 29 F.4th at 685. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The factual allegations in the amended complaint do not permit a reasonable inference that the defendants functioned in a capacity unrelated to their roles as advocates for the state.[2] *See*

---

[2] We reject Ward's attempt to carve out his claims against Mauldin, a supervisory prosecutor, from the scope of absolute immunity. Because Mauldin's liability depended on the conduct of subordinates in Ward's case, for which absolute immunity applies, Mauldin is likewise entitled to absolute immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 345–46 (2009) (explaining that "supervisory prosecutors are immune in a suit directly attacking their actions

*Rehberg*, 611 F.3d at 838.  There are no allegations that the defendants engaged in "functions normally performed by a detective or police officer," *id.*, nor that they acted as witnesses, spokespersons, or advisers, *see Van de Kamp*, 555 U.S. at 343.  Rather, what the amended complaint describes are the ordinary functions involved in initiating and continuing a prosecution, even if Ward believes the defendants exercised those functions wrongfully to harm him.

But even assuming Ward is correct that the prosecution was baseless and should have been abandoned, "the determination of absolute prosecutorial immunity depends on the nature of the function performed, not whether the prosecutor performed that function incorrectly or even with dishonesty, such as presenting perjured testimony in court." *Hart v. Hodges*, 587 F.3d 1288, 1297–98 (11th Cir. 2009).  As a result, "[a]bsolute immunity renders certain public officials completely immune from liability, even when their conduct is wrongful or malicious prosecution." *Id.*  As a result, the doctrine sometimes "deprives a plaintiff of compensation that he undoubtedly merits." *Van de Kamp*, 555 U.S. at 348.

Because the alleged wrongful conduct concerned core prosecutorial functions, the district court correctly determined that the

---

related to an individual trial," as well as suits alleging a faulty-training or supervision claim that "rests in necessary part upon a consequent error by an individual prosecutor" in the plaintiff's case).  In a case like this, the same concerns that underlie prosecutorial immunity for the frontline prosecutor also apply to supervisory prosecutors. *Id.* at 346–47.

defendants were absolutely immune from Ward's § 1983 claims based on pre-conviction conduct.

## B.  Qualified Immunity

Even if absolute immunity does not apply, the defendant prosecutors are still entitled to qualified immunity.  "Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Rehberg*, 611 F.3d at 838.  "An official's conduct violates clearly established law when the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Echols v. Lawton*, 913 F.3d 1313, 1323 (11th Cir. 2019) (cleaned up).  At the motion-to-dismiss stage, it is appropriate to grant the "defense of qualified immunity . . . if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quotation marks omitted).

Ward appears to allege two discrete constitutional violations based on pre-conviction conduct.  First, he says that the prosecutors violated his Fourth Amendment rights because they lacked probable cause to believe he had committed aggravated stalking based solely on his act of sending a book to the victim in violation of the no-contact order.  And second, he maintains that, after his acquittal for stalking, the ensuing prosecution for aggravated stalking violated his right against double jeopardy.

Here, Ward has not plausibly shown the violation of a clearly established right. First, the arrest and prosecution were supported by arguable, if not actual, probable cause. *See Grider v. City of Auburn,* 618 F.3d 1240, 1257 (11th Cir. 2010) ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause.").

Under Georgia law, a person commits aggravated stalking if he contacts another person in violation of a protective order without consent and "for the purpose of harassing and intimidating the other person." O.C.G.A. § 16-5-91(a). Because Ward violated the no-contact order following his arrest for stalking the same victim, there was probable cause to believe he had violated § 16-5-91(a), notwithstanding that the state bore the burden at trial to establish "a pattern of harassing and intimidating behavior" beyond "[a] single violation of a protective order." *State v. Burke*, 695 S.E.2d 649, 651 (Ga. 2010) (noting that a protective order does not necessarily require findings of past misconduct). Apart from alleging that certain evidence was barred on double-jeopardy grounds, Ward does not explain why the defendants could not reasonably have viewed his past conduct toward the victim as establishing the requisite pattern of harassing and intimidating behavior. While the Georgia Court of Appeals later found that the state's presentation of the evidence ran afoul of the Double Jeopardy Clause, that's distinct from the question of whether probable cause existed. Indeed, the court stated that there was sufficient evidence to support a conviction

had the state focused on post-arrest events. *Ward*, 831 S.E.2d at 206–07.

Second, Ward has not shown that the prosecutors violated his clearly established right against double jeopardy. To begin with, the Georgia Court of Appeals never suggested that the second indictment was improper or that the Double Jeopardy Clause posed an absolute bar to prosecution. Rather, in the majority's view, the state ran afoul of that clause at the second trial by presenting essentially the same evidence as the first trial. *See Ward*, 831 S.E.2d at 206–07. But if the state "had limited its presentation of the evidence to events since Trial 1," the majority stated, "the evidence would have been sufficient to sustain the aggravated stalking charge." *Id.* at 206. Because it appears the state could have obtained a valid conviction on the aggravated stalking charge, the defendants' refusal to dismiss that charge after Ward's acquittal does not, by itself, establish a constitutional violation.

Not only that, but reasonable prosecutors could differ on whether the prior acquittal barred the presentation of evidence from the first trial. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). Ward does not identify any comparable case that would have provided "fair warning" that the defendants' conduct in the second trial violated his clearly established right against double jeopardy. *See Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1146 (11th Cir. 2017) ("The salient question is

whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional." (quotation marks omitted)).  Ward cannot prove adequate notice simply by pointing to the double-jeopardy test from *Blockburger v. United States*, 284 U.S. 299 (1932), because we must "consider the official's conduct in the specific context of the case, not as broad general proposition[s]." *Echols*, 913 F.3d at 1323–24 (quotation marks omitted).

Indeed, the dissenting judge's opinion in Ward's case shows that, in the specific context here, whether the second trial ran afoul of the Double Jeopardy clause was subject to reasonable dispute. *See Ward*, 831 S.E.2d at 207–08 (Goss, J., dissenting).  As the judge noted, the second trial was based on an indictment charging a different act on a different date than the first trial, even if it relied on the same evidence to establish the requisite pattern of harassing and threatening behavior. *See id.*  And the Georgia Court of Appeals has previously stated that "stalking is, by its very nature, a cumulative crime," and that double jeopardy generally does not prohibit the state's use of the same evidence to demonstrate a course of conduct in separate stalking prosecutions. *Daker v. State*, 548 S.E.2d 354 (Ga. Ct. App. 2001).

While the majority in *Ward* distinguished *Daker*, noting that it "did not involve an acquittal," 831 S.E.2d at 206, the state of the law was not so clear "every reasonable official would have understood" that prosecuting Ward for aggravated stalking after his acquittal of misdemeanor stalking of the same victim violated his

right against double jeopardy. *Echols*, 913 F.3d at 1323. So if absolute immunity did not bar Ward's claims, qualified immunity did.

## C. Conspiracy to Delay the Appeal

Finally, we assume without deciding that the defendants are not immune from Ward's claim of a post-conviction conspiracy to delay the appeal and deprive him of a direct appeal. Even so, though, we affirm the dismissal of this claim because, as the district court observed, Ward offers nothing more than vague and conclusory allegations to support the alleged conspiracy.

A plaintiff may bring a § 1983 claim for conspiracy to violate constitutional rights. *Grider*, 618 F.3d at 1260. To state a claim, the plaintiff "must show, among other things, that the defendants reached an understanding to violate his rights." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (quotation marks omitted); *see Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("the linchpin for conspiracy is agreement, which presupposes communication").

Here, considered as a whole and in the light most favorable to Ward, the allegations fail to plausibly establish an agreement to deny his rights. The allegation that, "[u]pon information and belief," the defendant prosecutors "acted in concert with one another" and unnamed court officials to delay a hearing is simply a conclusory assertion devoid of factual content. The only real facts alleged are that the prosecutors obtained two continuances of the new-trial hearing in 2010 and never filed a written response. But

there is no indication of an agreement to delay the appeal, of any joint action or communication, or of any action by the prosecutors from October 2010 through the date of the hearing in September 2017.

Clearly, a breakdown or multiple breakdowns occurred in Ward's case, and the resulting delay is unacceptable. But a breakdown does not require a conspiracy, however unfortunate the result. As the Georgia Court of Appeals observed, the duty to ensure that post-conviction motions are decided "without unnecessary delay" belongs to "all those involved in the criminal justice system," not just prosecutors. *Ward*, 831 S.E.2d at 201–02.

Because the existence of a conspiracy to deprive Ward's right is supported by nothing more than threadbare and conclusory allegations, Ward has not stated a plausible § 1983 conspiracy claim. We therefore affirm the dismissal of this claim. *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.2 (11th Cir. 1998) ("We may affirm a decision on any adequate grounds, including grounds other than the grounds upon which the district court actually relied.").

**AFFIRMED.**