[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11219
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cr-00075-JES-SPC-8


UNITED STATES OF AMERICA,

                                                        Plaintiff - Appellee,

versus

ROBERT POWNER,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 11, 2012)

Before MARCUS, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Robert Powner appeals his conviction for conspiracy to possess with intent to distribute Oxycodone, Methadone, and Alprazolam in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846.

On July 28, 2009, the Lee County Sheriff's Office in Florida conducted a search of a residence where Powner was present. The district court determined that much of the search was unlawful, and therefore suppressed the statements of multiple witnesses made at the time of the search, as well as all tangible items seized during the search. However, the district court refused to suppress either the subsequent post-arrest statements of Powner or the trial testimony of his co-defendants. The court found that the statements and testimony were sufficiently attenuated from the taint of the illegally seized evidence, so that they did not constitute fruits of an illegal search. On appeal, Powner argues that the district court should have suppressed both his post-arrest statements and the trial testimony of his co-defendants as the fruits of an illegal search.

A district court ruling on a motion to suppress raises mixed questions of law and fact. United States v. Ramirez-Chilel, 289 F.3d 744, 748–49 (11th Cir. 2002). We review the findings of fact for clear error, and the application of law to those facts de novo. United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006).

Under the Fourth Amendment, evidence derived from information that was

obtained by unconstitutional means can be suppressed as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963). The exclusionary rule, however, does not bar the admission of this type of evidence in all criminal proceedings. The Supreme Court has held that "evidence seized during the course of an unlawful search and . . . evidence derived therefrom (the fruits of the unlawful search)" can be admitted in grand jury proceedings. United States v. Calandra, 414 U.S. 338, 354, 94 S. Ct. 613, 623 (1974). The Court has also held that live-witness testimony may be sufficiently attenuated from the primary violation such that suppression of that testimony is not warranted, based on a number of factors. See United States v. Ceccolini, 435 U.S. 268, 278–79, 98 S. Ct. 1054, 1061 (1978). These factors include whether the testimony was coerced or induced; whether the tainted evidence itself was used to obtain that testimony; the amount of time that elapsed since the illegal search and the testimony; and whether the testimony can be logically traced back to the tainted evidence. See id. at 279–80, 98 S. Ct. at 1062.

Here, we agree with the district court that the post-arrest statements of Powner and the testimony of his co-defendants were sufficiently attenuated from the unlawful search and seizure. The thrust of Powner's argument is that the

government used evidence illegally seized during the July 28, 2009 search[1] to obtain indictments against him and his co-defendants Bergin, Martinez and Hamilton. The government then used these criminal charges to obtain post-arrest statements from Powner, as well as guilty pleas and trial testimony from his co-defendants. Therefore, according to Powner, his post-arrest statements and the testimony from his co-defendants should have been suppressed as fruits of the poisonous tree.

However, Powner does not contest the validity of the indictments themselves. Indeed, Calandra's holding that unlawfully seized evidence may be submitted to a grand jury to obtain an indictment would bar such an argument. See 414 U.S. at 354, 94 S. Ct. at 623. And given the validity of the indictments, we cannot accept Powner's contention that the statements and testimony extracted by using those otherwise valid indictments are somehow fundamentally tainted. See Jones v. Cannon, 174 F.3d 1271, 1287 (11th Cir. 1999) (stating that grand jury indictment "broke the chain of causation" for claim based on alleged false arrest).

We agree with Powner that Calandra does not necessarily cleanse all potential taint if illegally seized evidence is used outside the context of a grand

---

[1] During the July 28, 2009 search, police recovered ledgers listing the names of individuals involved in the distribution and sale of prescription drugs, including Powner's co-defendants.

jury proceeding. In other words, the Ceccolini factors may still apply to exclude statements or testimony obtained directly through illegally seized evidence, despite the fact that the evidence was also used to obtain an indictment in a grand jury proceeding. However, Powner has not alleged that the illegally seized evidence was used to coerce his post-arrest statements or his co-defendants' trial testimony, except insofar as it was used to obtain the indictments. He asserts that the police used illegally seized evidence in questioning Ms. Bergin on July 28, 2009, the night of the primary violation. However, the district court already suppressed Ms. Bergin's statements from this interrogation. Powner also claims that when the police questioned Ms. Hamilton at the time of her arrest, "[i]nformation obtained from the illegal search was known to and used by" the police. However, Powner neither argues that information gleaned from this interrogation was admitted at trial, nor in any way substantiates this conclusory allegation. Similarly, Powner's assertion that when the police questioned him after his arrest on September 28, 2009, they "had at their disposal all of the illegally seized evidence," falls short of demonstrating that the police actually used that tainted evidence to coerce Powner's post-arrest statements. Therefore, we decline to hold that Ceccolini bars the admission of either Powner's statements

5

or the trial testimony of his co-defendants.[2]

We therefore agree with the district court that the indictments and guilty pleas were intervening events that sufficiently attenuated the evidentiary taint from the initial Fourth Amendment violations.

**AFFIRMED.**

---

[2] As to the trial testimony of co-defendant Martinez, Powner argues that her testimony was coerced through the indictment against her. As we explained above, neither the use of illegally seized evidence to obtain an indictment, nor the subsequent use of that valid indictment can be the sole basis for finding evidentiary taint in light of Calandra.